**CLARK OIL & REFINING CORP., et al., Respondents-Plaintiffs,**

**v.**

**The Honorable John ASHCROFT, Attorney General of Missouri, Appellant-Defendant.**

**No. 63935.**

Supreme Court of Missouri, En Banc.

Aug. 31, 1982.

Rehearing Denied Oct. 12, 1982.

John Ashcroft, Atty. Gen., William L. Newcomb, Jr., Warren D. Weinstein, Robert E. Dolan, Jr., Asst. Attys. Gen., Jefferson City, for appellant-defendant.

Thomas M. Carney, St. Louis, William J. Fleischaker, Joplin, Linda Martin, Tulsa, Okl., Gary T. Nelms, Springfield, Alex Bartlett, Jefferson City, Francis J. LaPallo, Washington, D.C., for respondents-plaintiffs.

SEILER, Judge.

The attorney general appeals from a declaratory judgment entered in Cole County Circuit Court March 11, 1982, ruling that the Missouri attorney general had no power under Missouri law to maintain *parens patriae* damage actions pursuant to § 4C of the Clayton Antitrust Act, 15 U.S.C. § 15c (1976).[1] We reverse and remand.

---

1. 15 U.S.C. § 15c(a)(1) reads in pertinent part as follows:

   (a)(1) Any attorney general of a State may bring a civil action in the name of such State, as parens patriae on behalf of natural persons residing in such State, in any district court of the United States having jurisdiction of the defendant, to secure monetary relief as provided in this section for injury sustained by such

Appellants base jurisdiction on the validity of the statutory and title-to-state office construction portions of Art. V, § 3, Mo. Const., as amended 1976, and in the alternative on Art. V, § 10, because of the importance of an issue of statewide concern. Respondents challenge all three jurisdictional bases. Although our original jurisdiction under Article V, § 3 is disputed, "by reason of the general interest and importance of the other questions in the case, and need for adjudication at this level, . . . we will retain and decide the case, rather than go through the time-consuming procedure of sending the case to the court of appeals and then transferring it back prior to opinion." *Foremost-McKesson, Inc. v. Davis,* 488 S.W.2d 193, 196 (Mo. banc 1972).

The attorney general originally filed a *parens patriae* action for damages in September of 1979 against respondent Clark Oil and others in federal district court, *State of Missouri by John Ashcroft, Attorney General, v. Dugan-Lowe Oil Company, et al.* Respondents filed motions for judgment on the pleadings. The court overruled the motion in an opinion dated June 24, 1981, holding that "as a matter of federal law, the Missouri attorney general properly prosecutes this action."

On March 5, 1980, the attorney general filed a second *parens patriae* suit, again in federal district court, *State of Missouri by John Ashcroft, Attorney General, v. Central Petroleum Company.* Respondent Clark Oil and others were also defendants in that action, and filed motions to dismiss essentially identical to Clark Oil's motion in the *Dugan-Lowe* case. The court denied those motions based on the June 24 opinion.

Respondent Sinclair then requested, and the district court granted, certification on the issue of the attorney general's standing to the eighth circuit under 28 U.S.C. § 1292(b). That court turned down the interlocutory appeal.

Respondents then sought declaratory relief in the Circuit Court of Cole County, from which the attorney general now appeals.

natural persons to their property by reason of

The issue in this case is whether Missouri law permits the attorney general to maintain a *parens patriae* damage action under the federal antitrust laws. Before determining whether the attorney general is so empowered, it is necessary to sketch briefly the nature and purpose of the *parens patriae* suit.

In the United States, the *parens patriae* suit has expanded beyond its early British function as the king's "royal prerogative", in which the king's power was exerted on behalf of legal incompetents, to include cases where a state sues to prevent or repair harm to its quasi-sovereign interests. *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 258, 92 S.Ct. 885, 889, 31 L.Ed.2d 184; Comment, State Protection of its Economy and Environment: Parens Patriae Suits for Damages, 6 Col.J.L. & Soc.Prob. 411, 412 (1970). The United States Supreme Court has recognized *parens patriae* actions throughout this century, the first time in *Louisiana v. Texas,* 176 U.S. 1, 20 S.Ct. 251, 44 L.Ed. 347 (1900) (permitting the state of Louisiana to sue the state of Texas to prevent Texas officials from administering state quarantine regulations so as to restrict commerce from Louisiana), followed by a series of cases recognizing the "propriety and utility" of *parens patriae* suits. *Hawaii v. Standard* at 258, 92 S.Ct. at 889. *Parens patriae* suits have been used in antitrust cases since 1945, when the Supreme Court allowed the state of Georgia to sue as a "quasi-sovereign" a number of railroad companies on allegations of a price fixing conspiracy. *Georgia v. Pennsylvania R.R. Co.,* 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051 (1945). The state of Hawaii brought a *parens patriae* damage action in *Hawaii v. Standard Oil,* 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1971), but the issue there turned on the question, whether the injury asserted by Hawaii met the statutory "injury to business or property" requirement. *Hawaii v. Standard Oil* at 261, 92 S.Ct. at 890. The ninth circuit in State of *California v. Frito-Lay,* 474 F.2d 774 (9th Cir.),

any violation of Sections 1 to 7 of this title.

*cert. denied,* 412 U.S. 908, 93 S.Ct. 2291, 36 L.Ed.2d 974 (1973) refused to entertain a *parens patriae* damage action, prompting Congress to amend the antitrust laws to provide specifically for such actions, in the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. §§ 15c et seq., 18a, 1311 et seq. *See* H.R.Rep. No. 94–499, 94th Cong., 2d Sess. 3, *reprinted in* [1976] U.S. Code Cong. & Ad. News 2572, 2578.

Although 15 U.S.C. § 15c(a)(1) provides attorneys general express authority to maintain *parens patriae* damage actions, the amended statute allows a state to prohibit them:

> [T]his title shall apply in any State, unless such State provides by law for its nonapplicability in such State.

15 U.S.C. § 15h. The Missouri legislature has passed no such law, but it has not passed specific enabling legislation, either. However, there exists ample authority in Missouri law for the attorney general to bring these suits.

The Missouri attorney general derives his power to represent the state from both statutory and common law.[2] Specifically, § 27.060 RSMo 1978, provides:

> The attorney general shall institute, in the name and on the behalf of the state, all civil suits and other proceedings at law or in equity requisite or necessary to protect the rights and interests of the state, and enforce any and all rights, interests or claims against any and all persons, firms or corporations in whatever court or jurisdiction such action may be necessary . . .

§ 27.060 RSMo 1978.

The Missouri antitrust law empowers the attorney general further:

> The attorney general may represent, . . . the state . . . to enforce the provisions of sections 416.011 to 416.161 [of the Missouri Antitrust Law] or in actions brought in

the federal courts under any federal statute pertaining to antitrust . . .

§ 416.061 RSMo 1978.

The statutory language plainly authorizes the attorney general to bring a *parens patriae* action for damages under 15 U.S.C. § 15c(a)(1).[3] By the terms of these statutes, the attorney general may institute proceedings on behalf of the interests of the state. Contrary to respondent's assertions, the *parens patriae* action is not merely a suit on behalf of individual citizens prosecuting their private damage claims against other private individuals. It is an action on behalf of the state, in which the attorney general seeks to vindicate the rights of all Missouri citizens injured by actions in restraint of trade. Thus, we need not apply *State ex rel. Barker v. Chicago & Alton Railroad Co.,* 265 Mo. 646, 178 S.W. 129 (banc 1915). In *Barker,* the state "had no right to enforce mere private rights." 178 S.W. at 137. Here, the state is enforcing a public right. At any rate, reliance on *Barker* fails to account for Congress's explicit provision for state attorneys general to prosecute antitrust damage actions on behalf of their citizen consumers in 15 U.S.C. § 15c(a)(1). *See* the June 24, 1981, Order, U.S. District Court, Western District of Missouri, p. 3, note. As the court concluded,

> Language from cases decided in the absence of statutory authorization will not be used by this Court to defeat legislation enacted to cure that very deficiency of authority.

*Id.*

Our conclusions regarding the public character of a *parens patriae* suit also obviate respondent's argument that the attorney general thereby spends public funds for private purposes in violation of Art. III,

---

**2.** *See, e.g., State ex rel. Taylor v. Wade,* 360 Mo. 895, 231 S.W.2d 179, 182, (Mo. banc 1950).

**3.** *Cf. State of New Mexico as Parens Patriae v. Scott & Fetzer Co. and Others,* 1981–2 Trade Cases, ¶ 64,439, and *State of Iowa v. Scott & Fetzer Co.,* Order, No. 81–362E (July 8, 1982)

(Both upholding a state attorney general's power to bring *parens patriae* damage actions under 15 U.S.C. § 15c(a)(1) under statutory powers similar to those contained in the Missouri statutes).

§ 38(a), Mo.Const.[4]  This comports with the principle that a statute will be construed to avoid conflict with the constitution if possible.  *State Highway Commission v. Spainhower,* 504 S.W.2d 121, 125 (Mo.1973).

By instituting the *parens patriae* damage actions, the attorney general has carried out his statutory and common law duty to enforce public rights and protect citizen consumers against violation of the antitrust laws.  Federal law has explicitly created this cause of action.  While Missouri law does not expressly authorize the same, nowhere does it deny that power, despite statutory invitation to do so.  *See* above.  In light of clear statutory authorization for the attorney general to institute "*all* civil suits … necessary to protect the interests of the state …", § 27.060 RSMo 1978 (emphasis added), we reverse the judgment of the circuit court, and remand for further proceedings in accordance herewith.

DONNELLY, C. J., and RENDLEN, MORGAN, HIGGINS and BARDGETT, JJ., concur.

WELLIVER, J., dissents.

---

**4.**  The section reads as follows: "The general assembly shall have no power to grant public money or property, or lend or authorize the lending of credit, to any private person, association or corporation …