The STATE OF TEXAS, as parens patriae on behalf of natural persons residing in Texas, Plaintiff-Appellee,

v.

The SCOTT & FETZER COMPANY and the Kirby Sales Company, Inc., Defendants-Appellants.

No. 82–1404.

United States Court of Appeals, Fifth Circuit.

July 22, 1983.

Rehearing Denied Sept. 12, 1983.

Jack D. Maroney, Austin, Tex., William T. Plesec, Washington, D.C., Barry L. Springel, Cleveland, Ohio, for defendants-appellants.

Mark White, Atty. Gen., Katherine C. Bond, Steven Baron, Asst. Attys. Gen., Austin, Tex., for plaintiff-appellee.

Before POLITZ and JOLLY, Circuit Judges, and HUNTER *, District Judge.

EDWIN F. HUNTER, Jr., District Judge:

In this case, the State of Texas (acting through its Attorney General) seeks to bring suit in its capacity as *parens patriae* against defendants for their alleged violations of federal antitrust laws. Defendants moved to dismiss the complaint, insisting

---

* District Judge of the Western District of Louisiana, sitting by designation.

that the Attorney General had no State authority to maintain the action. The district court denied the motion, but certified the issue for appeal. The question presented is whether the Attorney General of Texas has authority to maintain this suit.

The action was instituted in October of 1980 against Scott & Fetzer Company and its wholly owned subsidiary, Kirby Sales Company, Inc. It is brought pursuant to Section 4C of the Clayton Act, which is often referred to as the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 90 Stat. 1394, 15 U.S.C. [15 U.S.C. §§ 15c–15h]. As is true in every case involving the construction of a statute, our starting point must be the language utilized by Congress. Section 4C provides:

> Any Attorney General of a State may bring a civil action in the name of such State, as parens patriae on behalf of natural persons residing in such state in any district court of the United States having jurisdiction of the defendant, to secure monetary relief as provided in this section for injury sustained by such natural persons to their property by reason of any violation of sections 1 to 7 of this title
> . . .

15 U.S.C. § 15c (1976). Section 15h provides that the Act

> "shall apply in any state, unless such state provides for its non-applicability in such state."

15 U.S.C. § 15h.

As the legislative history makes apparent, the Act was aimed primarily at enlarging the potential for consumer recovery for antitrust violations by effectively bypassing the burdensome requirements of Rule 23, Fed.R.Civ.P., that might tend to dissuade private litigants from pursuing consumer class actions for antitrust injury.[1] It involved no change in the substantive basis for antitrust liability. It simply created a new procedural device—*parens patriae* actions by States on behalf of their citizens—to enforce existing rights of recovery. *See* H.R.Rep. No. 499, 94th Congress, 2nd Sess. 6–8, reprinted in 1976 U.S.Cong. and Adm. News 2572, 2575–78. *Columbia ex rel. Rogers v. Mid-Atlantic Toyota Distributors, et al.,* 704 F.2d 125 (4th Cir.1983).

Defendants argue that the clear import of the Act is that Congress opened the doors of the federal district courts only to state attorneys general who independently possess state law authorization to institute *parens patriae* actions, and then insists that Texas has never authorized its Attorney General to institute such a lawsuit. Texas suggests that there are at least four different sources of authority which permit its Attorney General to institute a *parens patriae* action under federal antitrust laws. Alternatively, Texas insists that its authority to sue became effective upon Section 4C's enactment and continued in each state unless the state revoked it under Section 4H.[2] Accepting arguendo defendants' assertion that Congress could not expand the state-defined power of its Attorney Gener-

---

**1.** The House Report on the Bill ultimately enacted into law states that the thrust of the legislation is to overturn the decision in *California v. Frito-Lay, Inc.,* 474 F.2d 774 (9th Cir.), cert. denied 412 U.S. 908, 93 S.Ct. 2291, 36 L.Ed.2d 974 (1973). The Court in *Frito-Lay* had held that the State of California lacked standing to sue to recover treble damages as *parens patriae* on behalf of its citizens for antitrust injuries. The House Report, after quoting from *Frito-Lay,* went on to say:

> H.R. 8532 is a response to the judicial invitation extended in *Frito-Lay.* The thrust of the bill is to overturn *Frito-Lay* by allowing State attorneys general to act as consumer advocates in the enforcement process, while at the same time avoiding the problems of manageability which some courts have found un-

der Rule 23 [of the Federal Rules of Civil Procedure].
> Id. at 8, U.S.Code Cong. & Admin.News 1976, p. 2578.

**2.** Senate debate confirms that Section 4C was intended to affirmatively authorize state attorneys general to bring *parens patriae* damage actions. It reveals that this authority was to become effective upon Section 4C's enactment and to remain so in each state until that state decided to revoke it under Section 4H. 22 Cong.Rec. 15853 (1976). During the 1977 session of the Texas Legislature, H.B. 592 was introduced for this purpose but was not enacted into law. See H.B. 592 65th Leg. (Texas 1977).

al,[3] we hold that a suit such as the instant one, brought by the Texas Attorney General on behalf of the State, falls squarely and unambiguously within the grant of authority in Section 15.40 of the Texas Business and Commerce Code.

The Texas statute which authorizes antitrust actions to be brought by the attorney general antedates the federal legislation. It reads in pertinent part:

The attorney general may bring an action on behalf of the state or of any of its political subdivisions or tax supported institutions to recover the damages provided for by the federal antitrust laws, Title 15, United States Code ...

Tex.Bus. & Com.Code § 15.40(a) (Vernon Supp.1981).

Defendants argue that 15.40(a) does not authorize a statutory *parens patriae* damage action under the Hart-Scott-Rodino Antitrust Improvements Act; they insist that it authorizes only an action to recover damages for injury to the state in its proprietary capacity. We disagree. There is simply nothing to justify the judicial engrafting of such a limitation. The statute clearly does not confine the authority of the Attorney General to the prosecutions of common law *parens patriae* actions or actions to vindicate quasi-sovereign and proprietary state interests. Contrariwise, it fully authorizes the maintenance of the statutory right of action here in issue, which concededly is of neither type.

The United States Court of Appeals for the Fourth Circuit issued its decision in the *Mid-Atlantic Toyota Distributors, Inc.* cases on the very day that the instant case was argued (704 F.2d 125, 1983). The question there was whether the state attorneys general of Maryland, Delaware and Pennsylvania, and the Corporation Counsel of the District of Columbia, were authorized to maintain statutory *parens patriae* damage actions under Hart-Scott-Rodino (the Act), in the names of their respective jurisdictions on behalf of their natural-person residents injured by an alleged price-fixing conspiracy in violation of the Sherman Act. The language and reasoning of the Fourth Circuit is incisive and pertinent:

"While the statutory and constitutional definitions of the powers of the several plaintiff-attorneys general differ significantly, a common thread runs throughout. The Maryland Constitution provides that the Attorney General shall 'commence, and prosecute ... any civil ... action ... on the part of the State or in which the State may be interested,' Md. Const. art. V, § 3(a)(2); the Delaware Antitrust Act empowers the Attorney General to institute proceedings 'on behalf of the State and its public bodies' for suspected antitrust violations, Del.Code Ann. Tit. 6, § 2105 (Supp.1980); District of Columbia law provides that the Corporation Counsel shall 'have charge and conduct of all law business' of the District, D.C.Code Ann. § 1–361 (1981); and Pennsylvania's Commonwealth Attorneys Act specifies that the Attorney General 'shall represent the Commonwealth and its citizens in any action brought for violation of the antitrust laws, ... '

"While the language differs, each provision allocates to the attorney general power and authority to represent the jurisdiction and its interests in litigation. In at least two ways, we find the present actions to fall clearly within the ambit of each of the attorneys general's state-derived authority.

"First, these attorneys general have brought suits in the names of their respective states to enforce causes of action created by federal law. Whether the state is a real party in interest or merely a representative party, this cause of action exists in favor of the state. *See New Mexico v. Scott & Fetzer Co.*, 1981–2 Trade Cas. (CCH) ¶ 64,439, at 75,149

---

**3.** The nature of defendants' Tenth Amendment argument is of the type that courts have avoided until another day. So we have done today, but it must be noted that Section 4C does not impose any duties on the Attorney General. It merely provides that he *may* bring *parens patriae* actions. Congress has revealed its respect for state sovereignty by giving the state the option to withdraw the attorney general's permissive authority.

(D.N.M. Dec. 22, 1981). Because the attorneys general are suing to enforce their jurisdictions' causes of action, these lawsuits indeed are 'on the part of' Maryland, on 'on behalf of' Delaware, and representative of the Commonwealth of Pennsylvania and the 'law business' of the District of Columbia...

"In addition to their authority to sue to enforce their jurisdictions' statutory causes of action, these attorneys general have undoubted authority to pursue litigation that advances or vindicates public interests. *See Brown v. Stanton,* 617 F.2d 1224, 1232 n. 14 (7th Cir.1980) ('In general, a state Attorney General may institute such suits as he deems necessary for ... the protection of public rights.'), *vacated and remanded on other grounds,* 453 U.S. 917 [101 S.Ct. 3151, 69 L.Ed.2d 999] (1981) ... Indeed, the notion that these attorneys general may institute actions to remedy invasions of the public interest appears implicit in the statutory and constitutional schemes defining their powers.

"As Congress fully recognized in enacting the Antitrust Improvements Act, *see* H.R.Rep. No. 499, 94th Cong., 2d Sess. 6–8, *reprinted in* 1976 U.S.Code Cong. & Ad.News 2572, 2575–78; S.Rep. No. 803, 94th Cong., 2d Sess. 39–40 (1976), this statutory cause of action promotes enforcement of the federal antitrust laws, which promotes at the same time a state's public interest in protecting its citizens from violations of these laws, *see New Mexico v. Scott & Fetzer Co.,* 1981–2 Trade Cas. (CCH) ¶ 69,439, at 75,149 (D.N.M. Dec. 22, 1981); *Clark Oil & Refining Corp. v. Ashcroft,* 639 S.W.2d 594, 596–97 (Mo.1982); *see also Iowa v. Scott & Fetzer Co.,* 1982–2 Trade Cas. (CCH) ¶ 64,873, at 72,359 (S.D. Iowa July 8, 1982). We reject the defendants' contention that a state has an 'interest,' under the various provisions involved here, only in those suits which vindicate quasi-sovereign or proprietary interests. Undoubtedly, a state can have a legitimate public interest in ensuring the economic well-being of its citizens—and in indirectly promoting a smoothly functioning economy freed of antitrust violations—even though the most obvious beneficiaries may be individual consumers who ultimately recoup money damages."

We are in perfect accord with the conclusions reached by the Fourth Circuit and the rationale utilized in reaching those conclusions. The opinion is particularly cogent because of the remarkable similarity between the statutes there under scrutiny[4] and the Texas statute.

Defendants' attack upon the authority of the Attorney General to institute this suit follows naturally from their premise that the phrase "on behalf of the state" does not include *parens patriae* actions. The argument like the premise is incorrect and has been decisively rejected by the Fourth Circuit in *Mid-Atlantic Toyota Distributors, Inc.,* and the Missouri Supreme Court in *Clark Oil and Refining Corporation v. Ashcroft,* 639 S.W.2d 594 (Mo.1982). This premise runs directly contrary to the central thesis of the Fourth Circuit and the Supreme Court of Missouri, which is that a *parens patriae* action is not merely a suit on behalf of individual citizens; it is an action on behalf of the state in which the attorney general seeks to vindicate the rights of Texas citizens injured by alleged actions in restraint of trade.

By instituting a suit of this nature the attorney general exercises his statutory authority to protect citizen consumers against antitrust violations. *Clark Oil and Refining Corporation v. Ashcroft,* 639 S.W.2d 594 (Mo.1982). We reach the inescapable conclusion that the instant suit, as filed, falls squarely and unambiguously within the grant of authority contained in Section 15.-40.[5]

---

4. The wording of the statutes of Maryland, Delaware, District of Columbia and Pennsylvania appears in the opinion.

5. Texas cites Section 22 of Article IV of its Constitution and Article 4409 of its Civil Statutes as additional sources of authority. The Interpretive Commentary to Section 22 and cases construing the section establish that

We, of course, do not pass on the merits of the complaint. There is nothing in the record to indicate the truth or falsity of the allegations. We only hold that the Attorney General of Texas has standing and authority to maintain this action in a *parens patriae* capacity.

The District Court properly denied defendants' motion to dismiss the complaint. We affirm his decision and remand for further proceedings that may be appropriate.

REMANDED.

E. GRADY JOLLY, Circuit Judge, dissenting:

I am unable to conjure the conclusion reached by my two brethren that, although Texas does not expressly provide either by statute or in its Constitution for *parens patriae* actions by its attorney general, such actions are impliedly authorized under the broad language of Tex.Bus. & Com.Code Ann. § 15.40(a) (Vernon 1981).[1]

I begin with the proposition, which can hardly be gainsaid, that the powers of the attorney general derive either from common law or from *Texas*'s statutes and Constitution.

The common law authority vis-a-vis *parens patriae* has, commonly, been limited to actions involving infants and those having mental or other incompetencies and to actions involving the quasi-sovereign interests of the state. *See* Malina and Blechman, Parens Patriae *Suits for Treble Damages under the Antitrust Laws,* 65 Nw.U.L.Rev. 193, 198–203 (1970). As stated by the majority here, the instant case involves neither of these common law actions.

We are left, therefore, with Texas's statutes and Constitution.[2] In my view, it cannot be reasonably said that the Texas Legislature intended that section 15.40 provide the attorney general authority to bring the *parens patriae* action involved here.

First, I look to the statute itself. No mention is made of *parens patriae* suits. Despite the efforts by the majority to read such authority into section 15.40, this statutory provision is, on its face and by the clear import of its language, *limited* to suits "on behalf of the *state* or of any of its political subdivisions or tax-supported institutions . . . ." (Emphasis added.) This suit has *not* been brought "on behalf of the State" or on behalf of its subdivisions;

these two provisions confer broad responsibility to oversee private corporations to safeguard the public interest. The Attorney General argues that by bringing this action to prevent and deter alleged violations of the antitrust laws, he is acting precisely in conformity with Section 22 and Article 4409. We need not address this contention because of our holding that the instant action falls precisely within the grant of authority of Section 15.40.

1. Because the majority opinion turns solely upon the issue of the attorney general's *parens patriae* authority under Texas law, this dissent is directed solely to that issue. As noted in note 3 of the opinion, however, several residual issues exist, *the most important being that the Antitrust Improvements Act of 1976 grants authority to a state attorney general to bring a parens patriae antitrust action* "unless the State provides by law for its nonapplicability in such state." I have very serious doubts about Congress's constitutional authority to grant to a state's attorney general authority which the state has not seen to confer. Nor is this tenth amendment violation cured by the simple expedient of an "opt-out" clause. At the very least, a state attorney general will have been granted powers by Congress beyond those granted by

the state until the state has an opportunity to exercise its option. The putative evanescence of an unconstitutional grant of power does not render it constitutional.

2. In addition to section discussed in the majority opinion, the attorney general has relied upon Tex.Rev.Civ.Stat.Ann. Art. 4409 (Vernon 1976), which provides that the attorney general

shall . . . inquire into charter rights of all private corporations and, in the name of the State take such legal action as may be proper and necessary to prevent any private corporation from exercising any power or collecting any species of taxes, tolls, freight or wharfage not authorized by law.

Also, the attorney general refers us to Tex. Const. Art. IV § 22, which states that the attorney general "shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party . . . and perform such other duties as may be required by law."

My reasons for concluding that section 15.40 does not contain *parens patriae* authority are equally applicable to these two provisions.

rather, as stated in the caption of the case, it has been brought "as *parens patriae* on behalf of natural persons residing in Texas."

The majority reads the provision in section 15.40 for suits "on behalf of the state" as including authority to bring *parens patriae* actions. The *state* as a political entity is not the intended beneficiary of this suit; if any recovery is had, it will be by a few citizens who will have a few pennies and quarters put in their pockets with attendant publicity of the great victory against door-to-door vacuum cleaner salesmen [3] achieved by an ever-vigilant attorney general's office. The majority thus confounds the clear intent of the statute, which, in addition to section (a) discussed by the majority opinion, provides for notification of intent to bring suits by the attorney general *only* to political subdivisions and to tax-supported institutions. No mention is made in § 15.40(a) of notification to the public at large of any *parens patriae* suits. Had the legislature been thinking of *parens patriae* suits, it presumably would have provided for such notification so that individuals who desired to "opt-out" and bring their own cause of action could do so. Further, the statute provides specifically that when an action has been brought on behalf of a political subdivision or on behalf of a tax-supported institution the state shall retain such sums out of damages recovered as are necessary to reimburse the state for expenses incurred by it in the prosecution of the action. No mention is made of retention of funds out of damages recovered for individuals as might be recovered in a *parens patriae* suit.

There is a good reason for this: the legislature never gave any thought that some federal court would later read such suits and such authority of the Texas attorney general into the statute.

Moreover, in section 15.40(b) the statute provides that "[i]n any action brought by the Attorney General pursuant to the federal antitrust laws for the recovery of damages by the State or any of its political subdivisions or tax-supported institutions" the attorney general may take such actions in the prosecution of the suit as are appropriate and necessary. Glaringly absent from this statutory sub-section is any discussion of actions by the attorney general in connection with a suit brought to recover damages suffered by individuals. "The State" by any rational interpretation cannot be said to be synonymous with *parens patriae* representation.

Despite the absence of any provisions for *parens patriae* actions in section 15.40, the majority essentially holds that the broad language contained in this statutory section includes within its broad reach *parens patriae* authority and that even if the state legislature did not specifically confer this authority, *parens patriae* authority is consistent with the authority which was specifically granted.[4] So the majority, benificently, magically, confers this authority by its own act; so much for preachments against judicial legislation.

Needless for me to say, this, in my opinion, exceeds the authority of this court. As stated in *State v. Harney,* 164 S.W.2d 55, 56 (Tex.Civ.App.1942), "the powers and duties

---

**3.** This suit involves an allegation that the defendants, through the mechanism of selling vacuum cleaners door-to-door, violate antitrust law by "imposing a system of resale price maintenance and unreasonable customer restrictions on their distributors and participating in group boycotts of retail vacuum cleaner stores." Brief for Appellee at 1.

The essential allegation in this case appears to be that, selling door-to-door, the defendants were able to avoid head-to-head competition with other vacuum cleaner retailers, avoid price advertising and maintain artificially high prices for their products.

**4.** Indeed, in the State's brief, the attorney general takes the ingenuous position that, whether or not the Texas legislature contemplated *parens patriae* suits in enacting section 15.40, he possesses that authority because the statute confers authority to recover all damages recoverable under the federal antitrust laws, such as damages suffered by natural persons. Brief for Appellee at 12–13. This implicates the tenth amendment, of course, and as discussed *supra* note 1, neither the majority nor this dissent deals with that issue. The significance of the rather glib concession by the appellee is that, as in the majority opinion, the desires of the Texas state legislature are deemed irrelevant.

of the Attorney General are prescribed by the Constitution and Statutes, [and] those powers must be limited to those so prescribed, and may not be enlarged by the courts." Also *Hill v. Lower Colorado River Auth.,* 568 S.W.2d 473, 480 (Tex.Civ.App. 1978) (stating that there has been "consistent adherence" to this principle). So, where the majority states that there is "nothing to justify the judicial engrafting of such a limitation" on the attorney general's power to bring a *parens patriae* action, I say, to the contrary, there is every reason why this court cannot engraft the extra-statutory *expansion* of authority granted by the majority opinion. Under *Harney* and *Hill,* it is not enough that *parens patriae* authority is "consistent with" the statutory authority provided by the legislature. The authority exercised by the attorney general must be real and actual and conferred by the legislature—not by Congress or by the Fifth Circuit Court of Appeals.

In its assumption that section 15.40 does subsume *parens patriae* actions, the majority, relying on *Mid-Atlantic Toyota,* makes much of the argument that *parens patriae* authority is contained in the broad grant of authority under section 15.40 because the economic well-being of the state is implicated and therefore the state has a legitimate interest in pursuing the antitrust remedy sought.

Of course a state has a legitimate interest in its economy. But that obvious interest does not translate, absent the philosopher's stone, into general authorization for the state's attorney general to pursue a *parens patriae* action absent authority of state legislation. In fact, as the Antitrust Improvements Act was originally introduced, a state would have been expressly authorized to bring actions for harm to its general economy as well as to its citizens.[5] This "general economy" provision was omitted from the Act's final version which, as enacted, provided only for *parens patriae* actions to recover damages "for injuries sustained by such natural persons to their property . . . ."[6]

I see no reason why, if a state may not sue in its own name for general economic harm, it may be allowed under some "natural law" concept to come in and sue in the name of its citizens for redress of that harm. Nor, given section 4C's clear provision only for recovery of damages for injuries sustained by individuals, does this backdoor approach provide support for suit by the attorney general. The majority and *Mid-Atlantic Toyota* attempt to equate "action on behalf of the State" with "economic well-being" with "*parens patriae*." The logic does not survive the leap, however. The "general economy" argument strikes me as irrelevant.

In sum, the majority *ignores* the substantive distinction between suits on behalf of the state, which are provided for in section 15.40, and *parens patriae* actions, which are not provided for, explicitly or implicitly, in section 15.40. The majority opinion holds essentially that "actions on behalf of the state" include *parens patriae* suits. The majority by its writing erases the traditional, historical basis for *parens patriae* actions. Twelve states and the District of Columbia have provided express authority to their attorneys general to bring antitrust *parens patriae* actions.[7] According to the

---

5. In *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 264, 92 S.Ct. 885, 892, 31 L.Ed.2d 184 (1972), the Court held that, inasmuch as section 4 of the Clayton Act allowed recovery only for injury to "business or property," suits for general economic harm had not been provided for by Congress. Further, the Court held that to permit recovery for such harm would duplicate individually recoverable damages.

6. *See* Scher *Emerging Issues under the Antitrust Improvements Act of 1976,* 77 Colum.L. Rev. 679, 713 n. 195 (1977).

7. *See* Cal.Bus. & Prof.Code § 16760; Conn. Gen.Stat.Ann. § 35–32; Del.Code, tit. 6, § 2108; D.C.Code Ann. § 28–4507; Fla.Stat. Ann. § 542.22; Haw.Rev.Stat. § 480–14; Mass. Ann.Laws 93, § 9; Nev.Rev.Stat. § 598A.160; Or.Rev.Stat. § 646.775; R.I.Gen.Laws § 6–36– 12; S.D.Comp.Laws Ann. §§ 37–1–23 to –32; Va.Code § 59.1–9.15; W.Va.Code § 47–18–17.

majority, they could have saved themselves the trouble.

The doctrine of *parens patriae* evolved in a specific way with specific applicability. It is a distinct, discrete jurisdictional device. The Texas State Legislature, had it seen fit, could have conferred upon its attorney general authority to bring *parens patriae* suits. The legislature clearly has not done so. The majority, despite the absence of authority, not only reads between the lines of the statute, but veritably gazes into the Utopian skies of "ought-to-be" and glimpses that authority. I am not gifted with such visionary powers. I see no authority. I dissent.