# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 18, 2008

Charles R. Fulbruge III
Clerk

No. 08-30465

STATE OF LOUISIANA, EX REL, JAMES D. CALDWELL,

Plaintiffs-Appellants,

v.

ALLSTATE INSURANCE CO., ET AL.,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before STEWART, OWEN, and SOUTHWICK, Circuit Judges.

CARL E. STEWART, Circuit Judge:

The State of Louisiana, through its former Attorney General, Charles C. Foti, Jr.,[1] along with counsel from a number of private law firms[2] [collectively "Louisiana"], filed a lawsuit which it styled as a parens patriae action against the following defendants: Allstate Insurance Company, Lafayette Insurance Company, Xactware Solutions, Inc. ("Xactware"), Marshall & Swift/Boeckh, LLC

---

[1] Under the well-established rules of our federal courts, Attorney General Caldwell was automatically substituted for former Attorney General Foti. See, e.g., Fed R. App. P. 43(c).

[2] The four law firms are: McKernan Law Firm; Herman Herman, Katz &Cotlar, LLP; Capitelli & Wicker; and Glago Law Firm, LLC

("MSB"), Insurance Services Office, Inc. ("ISO"),[3] State Farm Fire and Casualty Company, USAA Casualty Insurance Company, Farmers Insurance Exchange, the Standard Fire Insurance Company, and McKinsey & Company, Inc. ("McKinsey") [collectively "Defendants"] in the Civil District for the Parish of Orleans alleging violations of Louisiana's antitrust laws. Defendants removed the action to federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). 18 U.S.C. § 1453(b). Louisiana moved to remand the action back to state court, but the district judge denied the motion. Louisiana petitioned this court for permission to appeal the interlocutory order under CAFA, which we granted. For the following reasons, we AFFIRM.

## FACTUAL AND PROCEDURAL HISTORY

On November 7, 2007, Louisiana filed a petition in state court seeking to "enforce the laws of this state, and more specifically, the Louisiana Monopolies Act [Louisiana Revised Statute § 51:123, et seq.], and to redress the wrongs committed by defendants against this state and its citizens," alleging that Defendants worked together to form a "combination" that illegally suppressed competition in the insurance and related industries. Specifically, Louisiana contends that "[i]n a scheme to thwart policyholder indemnity and in direct violation of their fiduciary duties, insurer defendants and others continuously manipulated Louisiana commerce by rigging the value of policyholder claims and raising the premiums held in trust by their companies for the benefit of policy holders to cover their losses as taught by McKinsey Company."

According to Louisiana, this combination started in the 1980s when McKinsey, a corporate advising company, engineered a strategy that undervalued insurance claims, allowing insurance companies and their shareholders to reap the profits. Initially, McKinsey advised insurers to stop

---

[3] Around August 2006, ISO acquired Xactware, and currently Xactware is a subsidiary and/or member company of ISO.

"premium leakage" by undervaluing claims using the tactics of "deny, delay, and defend;" as a result, many insurers began hiring McKinsey for management advice on how to increase their profits. The combination was strengthened by ISO, "a leading provider of statistical, actuarial, and underwriting information for the property/casualty insurance and risk management industries," through the databases and other computer programs that ISO provided to insurers (such as Xactimate, which is manufactured by Xactware, and IntergriClaim, which is manufactured by MSB), because those programs were manipulated to reduce the value of claims. Louisiana alleges that the defendant insurance companies (and possibly others) have worked with McKinsey and ISO to undervalue and underpay policyholders' claims, particularly in the wake of Hurricanes Katrina and Rita. Louisiana asserts in its complaint: "An agreement, combination or conspiracy between all defendants, and other unnamed competing insurance companies, existed, at all material times herein, to horizontally fix the prices of repair services utilized in calculating the amount(s) to be paid under the terms of Louisiana insureds' insurance contracts with insurers for covered damage to immovable property." In its petition, Louisiana contends that such price-fixing constitutes anti-trust violations under the Louisiana Monopolies Act. Louisiana is seeking forfeiture of illegal profits, treble damages, and injunctive relief.

On December 7, 2007, Defendants timely removed the case to the United States District Court for the Eastern District of Louisiana; Louisiana filed a motion to remand back to state court on January 7, 2008. Before the district court, Defendants argued that this case is removable under CAFA. They argued that although labeled parens patriae, this case is in substance and fact a "class action" or a "mass action" as those terms are used in CAFA because the petition is seeking treble damages on behalf of Louisiana insurance policyholders. Defendants urged the district court to look beyond the labels used in the complaint and determine the real nature of Louisiana's claims, arguing that all

of the procedural requirements of CAFA were satisfied: the putative class exceeds 100, the minimal diversity requirements are met, and the amount in controversy exceeds $5,000,000. See 28 U.S.C. § 1332(d). Defendants also argued that the fact that the Louisiana Attorney General is not proceeding under Federal Rule of Civil Procedure 23 or the analogous state rule is not determinative for CAFA purposes. Before the district court, Defendants highlighted that several other similar purported class actions are and/or were pending before the same federal district court, where the same group of lawyers filed, or attempted to file, nearly identical claims as those alleged in this case by the state of Louisiana, as further evidence that this lawsuit is in fact a class action. See Muzzy v. USSA Cas. Ins. Co., No. 06-4773, 2008 U.S. Dist. LEXIS 42870 (E.D. La. Feb. 20, 2008); Schafer v, State Farm Fire and Cas. Co., 507 F. Supp. 2d 587 (E.D. La. 2007); Mornay v. Travelers Ins. Co., No 07-5274 (E.D. La. filed Aug. 30, 2007).

On April 2, 2008, Judge Zainey held a hearing on the issue of removal. At the hearing, the district court was primarily concerned about who the real parties in interest are in this case. In noting that it was his responsibility to look to the substance of the complaint—to pierce the pleadings—and to determine the real nature of the claim asserted, he explained: "[I]t's the Court's responsibility to not just merely rely on who a plaintiff chose to sue, or, in this case, how the plaintiff chose to plead, but I have to look at the specific substance of . . . the complaint . . . ." Judge Zainey concluded that, while the State was a nominal party, the real parties in interest were the citizen policyholders. Ultimately, he denied Louisiana's motion to remand the case back to state court, concluding that the lawsuit was properly removed under CAFA.

Subsequently, Louisiana filed the present petition, seeking permission to appeal the district court's denial of its motion to remand. This Court granted the petition pursuant to 28 U.S.C. § 1453(c).

DISCUSSION

CAFA, which was enacted in 2005, provides for removal of class actions involving parties with minimal diversity. 28 U.S.C. § 1332(d)(2). Under the statute "class action" is defined as: "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1331(d)(1)(B). CAFA defines a "mass action" as: "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdiction amount requirement under [28 U.S.C. § 1332(a)]." 28 U.S.C. § 1332(d)(11)(B)(I).

In passing CAFA, Congress emphasized that the term "class action" should be defined broadly to prevent "jurisdictional gamesmanship:"

> [T]he Committee further notes that the definition of "class action" is to be interpreted liberally. Its application should not be confined solely to lawsuits that are labeled "class actions" by the named plaintiff or the state rulemaking authority. Generally speaking, lawsuits that resemble a purported class action should be considered class action for the purpose of applying these provisions.

S. Rep. No. 109-14, at 35 (2005). Congress also considered and rejected an amendment that would have exempted class actions filed by state attorneys general from removal under CAFA. See 151 Cong. Rec. S1157, 1163-64 (daily ed. Feb. 9, 2005) (statement of Sen. Hatch) ("At worst, [the amendment] will create a loophole that some enterprising plaintiffs' lawyers will surely manipulate in order to keep their lucrative class action lawsuits in State court. . . . If this legislation enables State attorneys general to keep all class actions in State court, it will not take long for plaintiffs' lawyers to figure out that all they need to do to avoid the impact of [CAFA] is to persuade a State attorney general to

simply lend the name of his or her office to a private class action."); see also Louisiana v. AAA Insurance, 524 F.3d 700, 705 (5th Cir. 2008) [hereafter "Road Home"] (discussing legislative history of CAFA).[4]

Louisiana argues that the district court erred by denying its motion to remand this lawsuit back to Louisiana state court. It asserts that this action is not a class action, but rather a parens patriae action which the Louisiana Attorney General is statutorily and constitutionally authorized to bring. It is true that the words "class action" or "mass action" do not appear in Louisiana's complaint. However, that does not end our inquiry. It is well-established that in determining whether there is jurisdiction, federal courts look to the substance of the action and not only at the labels that the parties may attach. See Grassi v. Ciba-Geigy, Ltd., 894 F.2d 181, 185 (5th Cir. 1990) ("[J]urisdictional rules may not be used to perpetrate a fraud or ill-practice upon the court by either improperly creating or destroying diversity jurisdiction. Were that to occur, we would not elevate form over substance but would accomplish whatever piercing and adjustments considered necessary to protect the court's jurisdiction." (internal quotation marks and citation omitted)); see also Wecker v. Nat'l Enameling & Stamping Co., 204 U.S. 176, 185-86 (1907) ("Federal courts should not sanction devices intended to prevent a removal to Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction."). This court has recognized that "defendants may pierce the pleadings to show that the . . . . claim has been fraudulently pleaded to prevent

---

[4] It appears that some Senators rejected the amendment because they thought it was unnecessary. See, e.g., 151 Cong. Rec. at 1163 (daily ed. Feb. 9, 2005) (statement of Sen. Grassley) ("The key phrase [ ] is "class action." Hence, because almost all civil suits brought by State attorneys general are parens patriae suits, similar representative suits or direct enforcement actions, it is clear they do not fall within this definition [of class action]. That means that cases brought by State attorneys general will not be affected by this bill.")

removal." See Burchett v. Cargill, Inc., 48 F.3d 173, 175 (5th Cir. 1995) (internal quotation marks and citation omitted).

We review a district court's decision to pierce the pleadings as well as the procedure for doing so for abuse of discretion. Guillory v. PPG Indus., Inc., 434 F.3d 303, 309 (5th Cir. 2005). However, Louisiana did not raise any objections to Judge Zainey's decision to pierce the pleadings or his procedure for doing so in this appeal. As such, that issue is waived. See Chambers v. Mukasey, 520 F.3d 445, 448 n.1 (5th Cir. 2008) ("Petitioner, however, does not brief this issue. Accordingly, it is waived." (internal citation omitted)). Therefore, we turn to the central issue in this appeal: namely, whether the district court erred in denying Louisiana's motion to remand. "This court conducts a de novo review of the district court's remand order." Preston v. Tenet Healthsystem Mem. Med. Ctr., 485 F.3d 793, 796 (5th Cir. 2007) (internal citations omitted).

The parties vigorously dispute whether Louisiana's action is a parens patriae action or whether, as the district court found, "the citizen policyholders are the real parties in interest." In resolving this dispute, we first turn to a discussion of the jurisprudence concerning parens patriae actions.

I.

The concept of parens patriae stems from the English constitutional system, where the King retained certain duties and powers, referred to as the "royal prerogative," which he exercised in his capacity as "father of the country." Hawaii v. Standard Oil Co. of Ca., 405 U.S. 251, 257 (1972). Historically, the term referenced the King's power as guardian over people who lacked the legal capacity to act for themselves. Id. The concept of parens patriae has also been established in this country's jurisprudence; the Supreme Court has written: "This prerogative of parens patriae is inherent in the supreme power of every state, whether that power is lodged in a royal person or in the legislature [and] is a most beneficent function . . . often necessary to be exercised in the interest

of humanity, and for the prevention of injury to those who cannot protect themselves." Alfred L. Snapp & Son v. Puerto Rico, ex rel. Barez, 458 U.S. 592, 600 (quoting Mormon Church v. United States, 136 U.S. 1, 57 (1890)). However, in this country the concept has been expanded considerably. See generally Richard P. Ieyoub & Theodore Eisenberg, State Attorney General Actions, the Tobacco Litigation, and the Doctrine of Parens Patriae, 74 Tul. L. Rev. 1859 (2000) (discussing the Supreme Court precedent acknowledging and expanding state's parens patriae authority); see also Hawaii, 405 U.S. at 257-60 (same).

Snapp is one of the Supreme Court's most recent pronouncements on when a state has standing to bring a parens patriae action. We are not called upon to decide today whether the Attorney General has standing to bring the present claims, but the Supreme Court's discussion of parens patriae is illuminating. In Snapp, the Court wrote that in order for a state to have standing it must be asserting an interest that relates to its sovereignty. 458 U.S. at 600-01. The Court recognized that not everything a State does is based on its "sovereign character." Id. at 601. Two non-sovereign interests, which would not provide a state with standing for a parens patriae action, are proprietary interests and private interests pursued by the state, where the state is only acting as a nominal party. Id. at 601-02. As far as the latter category is concerned, the Court wrote:

> [A] State may, for a variety of reasons, attempt to pursue the interests of a private party, and pursue those interests only for the sake of the real party in interest. Interests of private parties are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement. In such situations, the State is no more than a nominal party.

Id. at 602. One sovereign interest that was "easily identified" by the Court consists of "the exercise of sovereign power over individuals and entities within

the relevant jurisdiction—this involves the power to create and enforce a legal code, both civil and criminal . . . ." Id. at 601. The Court also explained that a state can bring a parens patriae action if it is seeking to vindicate a "quasi-sovereign interest." Id. While conceding that this term is vague, the Court wrote, after reviewing the relevant precedent, that "a State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." Id. at 607. The Court also explained that there are no "definitive limits on the proportion of the population of the State that must be adversely affected by the challenged behavior" in order to support a parens patriae action; rather such a determination turns on whether a "sufficiently substantial segment of [the State's] population" is affected by the direct and indirect effects of the alleged injury. Id. The Court suggested: "One helpful indication in determining whether an alleged injury to the health and welfare of its citizens suffices to give the State standing to sue as parens patriae is whether the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers." Id.

The Supreme Court's decisions in Hawaii and Snapp are useful in illustrating both the limitations and reach of parens patriae actions. In Hawaii, the state of Hawaii brought a lawsuit in federal district court, asserting a variety of antitrust claims against Standard Oil Company of California and related defendants due to their sale, marketing, and distribution of refined petroleum products. 405 U.S. at 252-56. One of the counts of the complaint alleged that the lawsuit was a parens patriae action and that the State was entitled to recover treble damages under § 4 of the Clayton Act, 15 U.S.C. § 15. Id. The district court denied the defendants' motion to dismiss, but the Ninth Circuit reversed. Id. at 256-57. On certiorari, the Supreme Court affirmed the Ninth Circuit, holding that § 4 of the Clayton Act did not authorize a state to sue for damages for an injury to its economy allegedly attributable to a violation of

antitrust laws.  Id.  at 263-65.  While the Court acknowledged that § 4 permits Hawaii to sue in its proprietary capacity for treble damages, it explained that if it were to construe that section to also permit states to recover damages for injuries to their economies "we would open the door to duplicative recoveries." Id. at 264.  The Court concluded by observing that class actions, rather than parens patriae actions, are the preferred vehicle for addressing antitrust violations.  Id. at 266.  In Snapp, the Commonwealth of Puerto Rico sued as parens patriae for Puerto Rican migrant farmworkers against Virginian applegrowers in federal district court, seeking to enjoin discrimination against Puerto Ricans workers under various federal statutes and regulations.  458 U.S. at 594-99.  The district court dismissed the case on the grounds that Puerto Rico lacked standing  to sue; however, the Fourth Circuit reversed.  Id. at 599.  The Supreme Court affirmed, explaining that Puerto Rico has parens patriae standing to sue to secure its residents from the harmful effects of discrimination. Id. at 609-10.  Thus, based on these two cases it is clear that while parens patriae actions are not restricted to their common law roots, there are some limitations, particularly when a state is seeking to recover damages for alleged injuries to its economy.[5]

---

[5] The concept of parens patriae has also been expanded by legislative enactments.  For example, in California v. Frito-Lay, the Ninth Circuit held that the State of California could not sue in a representative capacity as parens patriae in order to recover treble damages on behalf of its citizens-consumers for alleged injuries suffered by them due to the defendants' violations of federal antitrust laws.  474 F.2d 774, 775 (9th Cir. 1973).  In so holding, the court explained that such an action would expand the common-law concept of parens patriae "as it has been recognized in this country to date" because California did not have its own sovereign or quasi-sovereign interest that it was asserting.  Id. at 775-76.  The court also explained that class actions, with all their attendant procedural rules and safeguards were more appropriate than parens patriae for such types of actions.  Id. at 777 n.11.  In response to Frito-Lay, Congress amended § 4 of the Clayton Act by passing the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("HSRA"), 15 U.S.C. §§ 15c-15h.  "[T]he Act was aimed primarily at enlarging the potential for consumer recovery for antitrust violations by effectively bypassing the burdensome requirements of Rule 23 [of the Federal Rules of Civil Procedure] that might tend to dissuade private litigants from pursuing conventional consumer class actions for antitrust injury.  Therefore, the Act is best understood as constituting the states,

The district court correctly discerned that if the Attorney General is only a nominal party, and the policyholders are the real parties in interest, then the nature of the claims asserted must be examined to determine if they are removable under CAFA. Generally speaking, a party is a real party in interest when it is "directly and personally concerned in the outcome of the litigation to the extent that his participation therein will insure 'a genuine adversary issue

---

acting through their attorneys general, as consumer advocates in the [antitrust] enforcement process." Pennsylvania v. Mid-Atlantic Toyota Distribs., 704 F.2d 125, 128 (4th Cir. 1983) (internal quotation marks and citations omitted). HSRA, which contains its own procedural protections and safeguards to facilitate the representation of consumers in federal court by state attorneys general, see ibid, provides, in relevant part:

> Any Attorney General of a State may bring a civil action in the name of such State, as parens patriae on behalf of natural persons residing in such state in any district court of the United States having jurisdiction of the defendant, to secure monetary relief as provided in this section for injury sustained by such natural persons to their property by reason of any violation of sections 1 to 7 of this title . . .

15 U.S.C. § 15c (1976). Section 15h provides that the Act "shall apply in any state, unless such state provides for its non-applicability in such state." 15 U.S.C. § 15h. In short, HSRA created a statutory parens patriae action for state attorneys general.

As the language of HSRA makes clear, the statutory parens patriae right of action is broader than the common law right. See Mid-Atlantic Toyota, 704 F.2d at 129 n.8 ("We agree that the statutory right of action is more expansive. . . . [Common law parens patriae actions do not embrace] actions such as those here in issue where the state sues on behalf of injured natural residents."). In Mid-Atlantic Toyota, the Fourth Circuit explained that state attorneys general do not need specific statutory or constitutional authority to bring parens patriae actions under HSRA. Id. at 129. Rather, the court wrote that as long as a state attorney general has authority to bring lawsuits in the name of his/her respective state that enforce causes of action created by federal law and has authority to pursue litigation that advances or vindicates public interests, an attorney general has standing to bring a parens patriae action under HSRA. Id. at 130-31. Similarly, this court has held that Texas law, which does not provide its attorney general with specific authority to bring parens patriae actions, permitted the attorney general to bring a statutory parens patriae action under HSRA. Texas v. Scott & Fetzer Co., 709 F.2d 1024, 1027-28 (5th Cir. 1983). As Defendants highlight in their brief, a number of states enacted laws, many of which are modeled after HSRA, that provide their attorneys general with authority to file similar parens patriae antitrust actions under state law. This court has never addressed whether such a statute could shield a representative action from removal under CAFA; and both Mid-Atlantic Toyota and Scott & Fetzer were decided before CAFA was enacted. However, we need not address that issue here since it is undisputed that Louisiana has not enacted such a statute, nor has it amended the Monopolies Act to explicitly include such an action.

between the parties . . . .'" Land O'Lakes Creameries v. La. State Bd. of Health, 160 F. Supp. 387, 388 (E.D. La. 1958) (quoting United States v. Johnson, 319 U.S. 302, 304 (1943)). That court explained: "Such an interest is lacking when a state undertakes to sue for the particular benefit of a limited number of citizens. . . . The State must show a direct interest of its own . . . ." Id. In the context of parens patriae actions, another federal district court wrote: "The state is the real party in interest when an action concerns a type of 'injury' that the state either has addressed or would likely attempt to address through its laws to further the 'well-being of its populace.'" Harvey v. Blockbuster, 384 F.Supp. 2d 749, 755 (D.N.J. 2005) (quoting Snapp, 458 U.S. at 602).

## II.

We turn to the issue at hand. As an initial matter, we agree with Louisiana that its attorney general has statutory and constitutional authority to bring parens patriae antitrust actions. Louisiana Revised Statute § 51.138[6] empowers the Attorney General to enforce the Monopolies Act both criminally and civilly, and to seek redress against violators on behalf of both the state and private parties. Similarly, another provision of the Monopolies Act states:

> The district courts have jurisdiction to prevent and restrain violation of this Part, and the Attorney General or the district attorneys in their respective districts under the direction of the Attorney General or the governor, shall institute proceedings to prevent and restrain violations . . . .

LA. REV. STAT. ANN. § 51:128.[7] Further, we agree that provisions from the Louisiana Constitution provide the Attorney General with broad discretion to

---

[6] This provision states: "All suits for the enforcement of this Part shall be instituted in the district courts by the Attorney General, on his own motion or by the direction of the governor . . . ." LA. REV. STAT. ANN. § 51.138.

[7] Moreover, Louisiana Revised Statute § 13:5036 gives the attorney general discretion to "institute and prosecute any and all suits he may deem necessary for the protection of the interests and rights of the state." LA. REV. STAT. ANN. § 13:5036.

vindicate the interests of the State. LA. CONST. art IV § 8 (affording the attorney general authority "to institute, prosecute, or intervene in any civil action or proceeding"); see also Louisiana ex rel. Ieyoub v. Borden, No. 94-3640, 1995 U.S. Dist. LEXIS 1921 at *8 (E.D. La. Feb. 10, 1995) (relying on the aforementioned Louisiana constitutional and statutory provisions, to explain that the attorney general has parens patriae authority even though none of those provisions explicitly authorize the attorney general to sue in such a capacity); Louisiana ex rel. Ieyoub v. Classic Soft Trim, 663 So. 2d 835, 836 (La. Ct. App. 1995) (explaining that the aforementioned provisions provide the Attorney General with procedural capacity to bring a parens patriae antitrust action "alleging violations of the monopolies and unfair trade practices laws.").

The parties vigorously debate whether the Attorney General's parens patriae authority is extensive enough to allow the State to sue for treble damages in a representative capacity under state law. We need not address that issue. Even assuming arguendo that the Attorney General has standing to bring such a representative action, the narrow issue before this court is who are the real parties in interest: the individual policyholders or the State. We conclude that as far as the State's request for treble damages is concerned, the policyholders are the real parties in interest. The text of § 137 of the Monopolies Act, which authorizes the recovery of treble damages, plainly states that "any person who is injured in his business or property" under the Monopolies Act "shall recovery [treble] damages." The plain language of that provision makes clear that individuals have the right to enforce this provision. Accordingly, we agree with the district court and hold that under § 137 the policyholders, and not the State, are the real parties in interest.[8] See Louisiana ex rel. Guste v. Fedders

---

[8] If Louisiana were acting in its proprietary capacity it could sue for damages to its own business or property under § 137. But, as has already been discussed, a state's proprietary interest is not sufficient to grant it parens patriae standing.

Corp., 524 F. Supp. 552, 557 (M.D. La. 1981) (explaining that where the relief sought "operates only in favor of Louisiana consumers who are affected by a defendant's unlawful conduct," those consumers "are the real parties in interest . . . ."). In fact, Louisiana's argument that it is the only real party in interest is belied by the petition it filed in state court, which makes clear that it is seeking to recover damages suffered by individual policyholders.[9]      We need not address Louisiana's argument that § 138 of the Monopolies Act gives the Attorney General authority to enforce all provisions of the Monopolies Act. Once again, even assuming arguendo that such an interpretation of state law is correct, it does not resolve the central issue in this appeal: whether the "person who [was] injured in his business or property"—in this case the policyholders—are the real parties in interest. We have no reason to believe that they are not, especially given that the purpose of antitrust treble damages provisions are to encourage

[9] For example, the petition contains the following allegations: "In a scheme to thwart policyholder indemnity . . . ;" "This continuous arrangement gave insurers an unjust advantage over policy holders;" "[I]nsurers have combined to accumulate vast wealth for themselves . . . by violating their fiduciary duties to their insureds;" "Louisiana's insureds were forced to buy property insurance (commercial or homeowners) which likely would never provide full coverage for a loss;" "'Insurers have reduced their payouts and maximized their profits by turning their claims operations into 'profit centers' by using computer programs and other techniques designed to routinely underpay policyholder claims;'" "Defendant Insurers [ ] intentionally deflate the value of the damaged property payments owed to Louisiana insureds;" "An agreement, combination or conspiracy between all defendants, and other unnamed competing insurance companies, existed, at all material times herein, to horizontally fix the prices of repair services utilized in calculating the amount(s) to be paid under the terms of Louisiana insureds' insurance contracts with insurers for covered damage to immovable property;" "[T]hese insurers . . . intentionally deflated the market price in order to underpay their policyholders and/or artificially deflate, or attempt to deflate, construction and repair costs in the affected market;" "The purpose of the combination and conspiracy was to depress the amount paid out under the terms of the insurance contracts to below market price and deprive Louisiana insureds of the actual cash value and/or replacement value of the damaged property;" and "Defendants' intentional collusion in suppressing payments to Louisiana insureds . . . ." These are only a few examples; the petition is rife with statements that make clear that the policyholders are the real parties in interest in this action.

private lawsuits by aggrieved individuals for injuries to their businesses or property. See, Hawaii, 405 U.S. at 262.[10]

We are mindful that in this action Louisiana is also seeking the remedy of injunctive relief. If Louisiana were only seeking that remedy, which is clearly on behalf of the State, its argument that it is the only real party in interest would be much more compelling. In Road Home, a case involving many of the same parties that are currently before the court, the panel left to the district court the possibility that the various claims could be severed so that those claims that were removable under CAFA would remain in federal court but that Louisiana's claims could be remanded to state court. 524 F.3d at 711-12. We again raise that possibility here, for the district court to consider on remand. In making this suggestion, we are mindful of the fact that the district judge himself noted that the injunctive relief Louisiana was seeking was the type of remedy that state attorneys general's have pursued through parens patriae actions, but we also acknowledge that the district court "is the able manager of this complex litigation and we will not extend these appellate hands into that endeavor." See id. at 712.[11]

Having determined that the policyholders are real parties in interest, we agree that this action was properly removed pursuant to CAFA because the requirements of a "mass action" are easily met given the factual circumstances

---

[10] Moreover, Louisiana's reliance on Mid-Atlantic Toyota and Scott & Fetzer is misplaced. Both of those cases involve lawsuits brought under HSRA, a statute that specifically contemplates state attorneys general bringing representative actions such as the one at issue here. Mid-Atlantic Toyota, 704 F.2d at 127; Scott & Fetzer, 709 F.2d at 1024; see also supra note 5. Further, as we have already discussed, even if Louisiana had an analog state statute, it is not clear whether such a provision would save this action from removal under CAFA. See supra note 5.

[11] We also note that during oral argument, counsel for Louisiana insistently maintained that severance was an option the State was not interested in pursuing. However, if perchance Louisiana has reconsidered and the district judge finds it appropriate, we leave open this possibility.

of this case: this is a civil action involving the monetary claims of 100 or more persons that is proposed to be tried jointly on the ground that the claims involve common questions of law or fact; the aggregate amount in controversy is at least $5 million, this action involves claims of more than 100 Louisiana citizens who are minimally diverse from Defendants, and it is being brought in a representative capacity on behalf of those who allegedly suffered harm. See 28 U.S.C. § 1332(d)(11)(B)(I). Since we have concluded that this case was properly removed under CAFA's "mass action" provision, we need not address whether this lawsuit could, following further proceedings on remand, properly proceed as a class action under CAFA. We leave to the district judge's capable hands the manner by which the individual policyholders are to be added to this action. Once again, we need not extend our appellate hands into matters that the district court is well-able to address.

### III.

Finally, we address Louisiana's contention that federal jurisdiction in this case would violate the Eleventh Amendment of the Constitution. Louisiana contends that our nation's "system of dual sovereignty . . . prevents the application of CAFA to the State[s] acting through [their] Attorneys General." It argues that CAFA did not preempt or abrogate the States' Tenth or Eleventh Amendment rights as dual sovereigns because Congress can only abrogate the States' Eleventh Amendment immunity by a clear legislative statement. Seminole Tribe v. Fla., 517 U.S. 44, 56 (1996) ("'To temper Congress' acknowledged powers of abrogation with due concern for the Eleventh Amendment's role as an essential component of our constitutional structure, we have applied a simple but stringent test: Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." (citing Dellmuth v. Muth, 491 U.S. 223, 227-28 (1989))). Louisiana asserts that "[t]he plain

16

language of CAFA is completely devoid of a statement of congressional intent to force a state to litigation in the courts of another sovereign." Further, Louisiana contends that this court cannot hold that it constructively consents to or waives its Eleventh Amendment immunity because the Supreme Court has established that a state can only waive such immunity by express language in its Constitution or state statute. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 n.1 (1985) ("we require an unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment. As we [have previously written,] constructive consent is not a doctrine commonly associated with the surrender of constitutional rights, and we see no place for it here." (internal quotation marks and citation omitted)).

We review the issue of Eleventh Amendment immunity de novo. United States ex rel. Barron v. Deloitte & Touche, 381 F.3d 438, 439 (5th Cir. 2004). The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend XI. In Alden v. Maine, the Supreme Court explained that:

> sovereign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself. The Eleventh Amendment confirmed rather than established sovereign immunity as a constitutional principle; it follows that the scope of the State's immunity from suit is demarcated not by the text of the Amendment alone but by fundamental postulates implicit in the constitutional design.

527 U.S. 706, 728-29 (1999) (internal citations omitted).

This court recently addressed the issue of Eleventh Amendment immunity in the context of a class action brought by the State of Louisiana in Road Home. 524 F.3d at 706. In that case, the panel, after reviewing the Founders' debates over Article III, explained that the amendment was designed to prevent states

17

from having to defend themselves in litigation that was brought in the federal courts. Id. at 709-10. While the panel found that none of the precedent relating to Eleventh Amendment immunity were dispositive of this issue before it,[12] it concluded that Louisiana had waived its immunity by joining private parties in the lawsuit. Id. at 711 ("That said, none of the cases or founding history speak directly to the issue at hand, which might well raise a constitutional concern had the State not waived immunity by bringing a suit with private citizens: whether a state as a plaintiff suing defendants over whom it has regulatory authority in state court under its own state laws may be removed to federal court on diversity grounds under CAFA, rather than federal question jurisdiction." (emphasis in original)).

Since we have held that the individual policyholders are the real parties in interest, this issue is controlled by Road Home, and we hold that Louisiana has waived its Eleventh Amendment immunity. Id. ("We are persuaded that the State cannot pull these citizens under its claimed umbrella of protection in frustration of a congressional decision to give access to federal district courts to defendants exposed to these private claims . . . ."). While we acknowledge the

---

[12] A number of circuit courts have interpreted the Eleventh Amendment as only applicable when a state is a defendant. California ex rel. Lochyer v. Dynegy, Inc., 375 F.3d 831, 848 (9th Cir. 2004) ("[A] state that voluntarily brings suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal to a federal court of competent jurisdiction."); Oklahoma ex rel. Edmondson v. Magnolia Marine Transp. Co., 359 F.3d 1237, 1239 (10th Cir. 2004) ("[T]he Eleventh Amendment's abrogation of federal judicial power 'over any suit . . . commenced or prosecuted against one of the United States' does not apply to suits commenced or prosecuted by a State." (emphasis in original)); Regents of the Univ. of California v. Eli Lilly & Co., 119 F.3d 1559, 1564-65 (Fed. Cir. 1997) ("the Eleventh Amendment applies to suits 'against' a state, not suits by a state."); Huber, Hunt, & Nichols, Inc. v. Architectural Stone Co., 625 F.2d 22, 24 n.6 (5th Cir. 1980) ("of course, the eleventh amendment is inapplicable where a state is a plaintiff."). This is consistent with Supreme Court precedent. Alden, 527 U.S. at 728-29 (". . . and the scope of the States' immunity from suit . . . ." (emphasis added)); Ames v. Kansas, 111 U.S. 449, 462 (1884) ("a suit brought by a State in one of its own courts, against a corporation amendable to its own process . . . can be removed to the Circuit Court of the United States . . . .").

State's arguments on waiver, we are bound by circuit precedent. See Brown v. United States, 890 F.2d 1329, 1336 (5th Cir. 1989) (The "law of the circuit" rule states that "one Fifth Circuit panel may not overrule the decision, right or wrong, of a prior panel.").

## CONCLUSION

For the foregoing reasons, the district court's denial of Louisiana's remand motion is AFFIRMED and this case is REMANDED.

SOUTHWICK, Circuit Judge, dissenting:

It is with great respect for the members of the majority and the care they have taken with their analysis that I nonetheless offer this dissent.

This is my summary of the majority's conclusions: (1) the real parties in interest for the treble damage claims are the individual policy holders; (2) the authority of the Attorney General to be a representative of individual claimants to treble damages under the Monopolies Act can be assumed; (3) these claims may be adjudicated as a mass action; and (4) the district court on remand is to make the necessary adjustments to restructure the litigation.

My point of departure from the majority is in how we understand our role upon receiving a case removed from state court under the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005). The source of my disagreement as to the result is that I believe when we decide whether a suit is removable under CAFA, we should determine what the case is, not what it must be if all the relief requested is to be part of the litigation. If the majority is correct and the suit is presently deformed, I find we do not have jurisdiction until the necessary transformation into a mass or class action occurs.

The clearest evidence of the difference in my perspective from that of the majority is that my able colleagues have focused exclusively on two legal issues: who are the real parties in interest and the effect of the Eleventh Amendment on our resolution of the procedural issues. My opinion discusses neither, because I find the decision point is elsewhere.

As I will attempt to explain below, one predicate for a CAFA-removable "class action" is that the suit be brought under a statute or rule of procedure that authorizes a representative action, that is, a state equivalent of Rule 23. As presently structured, this suit is not brought under such a statute or rule.

Neither is the case presently a mass action. That ends the justification for CAFA removal.

Though the suit is not a mass or class action, perhaps it should be. The Attorney General may have no business bringing the treble damage claims because they belong to others. On the other hand, perhaps under Louisiana law he really may pursue the claims just as he asserts them in his complaint without the necessity of converting the suit into a class or mass action. In my view, though, such issues are not for us to resolve. We have no jurisdiction until there is removed to federal court an action brought in the manner that CAFA requires, by whatever name used as a disguise. We are not limited by the labels that a party chose. See Grassi v. Ciba-Geigy, Ltd., 894 F.2d 181, 185 (5th Cir. 1990). I do not agree, though, that piercing these pleadings reveals a federal case.

I would order a remand to state court. The Defendants could there get state court answers to these state law questions: (1) does the Louisiana Attorney General have authority to bring the treble damage claims under the Monopolies Act; (2) if so, may he bring suit without using the mechanism of a class or mass action; and (3) if such a mechanism must be employed, does the Attorney General wish to amend the suit or to dismiss the treble damage claims?

I now seek to explain my disagreement.

I. Class actions under the Louisiana Monopolies Act

I expect all agree that this action was properly removed if we can legitimately find that it is a suit that fits within CAFA's definition of a class or mass action. Federal jurisdiction may not be defeated by use of a disguise. Grassi, 894 F.2d at 185. But even when looking underneath the pleadings to discern the true nature of the suit, we begin with the proposition that the

plaintiff is the master of his complaint; all contested issues of fact and "any ambiguity or uncertainty in the controlling state law" must be resolved against the party who seeks removal based upon a claim that the plaintiff has disguised a federal case. See Rico v. Flores, 481 F.3d 234, 238-39 (5th Cir. 2007).

Doubts about propriety of removal are resolved in favor of remand. Guillory v. PPG Indus., Inc., 434 F.3d 303, 308-09 (5th Cir. 2005). I find that standard of review particularly appropriate when the argument is that the suit is removable under CAFA despite the disguise that it wears.

To determine what constitutes a removable class or mass action, I would look first to the language of CAFA. Under the statute, "class action" is defined as: "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action" which seeks over $5,000,000 in aggregate damages. 28 U.S.C. § 1332(d)(1)(B), (d)(2)(A). A "mass action" is "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)." 28 U.S.C. § 1332(d)(11)(B)(i).

The Attorney General denies that he has brought a class or mass action under the Monopolies Act. He maintains that he is acting purely in a parens patriae capacity, thus there is no need to certify a class or join additional parties. The Defendants assert that the Attorney General may seek treble damages under the Monopolies Act but not in his parens patriae capacity. Instead, the Defendants argue that he may only do so by bringing a class or mass action. This may be a concession; instead, it may be an adroit assertion

of the Attorney General's authority that assists the Defendants' argument that this case is already a removable class or mass action.

The majority finds this dispute irrelevant because, even if the Attorney General's parens patriae authority is as extensive as claimed, it cannot change the fact that he will never be more than a nominal party in his pursuit of treble damages. In their view, the policyholders are the real parties in interest. Even if that is so – a point I do not reach – I do not agree that such a conclusion makes this suit a mass action. Instead, I would find that he has simply filed a defective pleading under Louisiana law.

I find that we cannot force the Attorney General to litigate in the posture of a plaintiff in a mass action or, as the Defendants have argued, as a class representative, in order to confer federal jurisdiction. See 7AA CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1785 (3d ed. 1998) (recognizing the principle that a court "should not force the parties to try an action as a class suit when they prefer to litigate in their individual capacities"). Instead, relief to which the Attorney General is not entitled can be denied. If treble damages relief requires it, the Attorney General needs to decide whether to make this a class or mass action. Only when and if that decision becomes necessary will the federal court be assured of its jurisdiction.

To be clear, my concern is not over whether this complaint or Louisiana procedures use any particular label such as "class action."[13] Instead, I am relying on what CAFA declares to be the essentials of a removable action. The definitive aspect of CAFA-removable "class action" is a statute or rule of procedure that authorizes a representative action as a class action, that is, a

---

[13] A class-action equivalent of Rule 23 exists in Louisiana. La. Code Civ. Proc. arts. 591-597. A suit brought under those provisions would fit neatly into CAFA's class action definition. However, the parties have not invoked the Louisiana equivalent of Rule 23.

state equivalent of Rule 23. The Louisiana Monopolies Act appears to be no such statute. Nowhere does the Act authorize a representative action. To be sure, the Act empowers the Attorney General to enforce its provisions. La. Rev. Stat. § 51:138. But this provision does not cast the Attorney General in the role of a Rule 23 class representative every time he seeks to enforce the Act. Further, the Attorney General has neither joined additional parties nor invoked Louisiana class-action procedures. CAFA's "class action" provision is not meant to confer federal jurisdiction any time the removing party asserts that the plaintiff must act in a representative capacity. Nor is its "mass action" provision meant to confer federal jurisdiction simply because the removing party suggests that the best way to cure a defective pleading is to join 100 additional parties.

In summary, even if this suit should be a class action (as the Defendants argue) or a mass action (as the majority concludes), there is no jurisdiction until the suit has indeed been brought under a Rule 23 equivalent or as a mass action in state court. I distinguish this jurisdictional issue from the usual one involving removal, which is deciding whether a particular party should be ignored when evaluating the completeness of diversity. Voiding the effect on diversity of a fraudulently joined party confirms the basis for removal and upholds federal jurisdiction. Deciding that a removed case should be a class or mass action does not create or confirm anything. It only states our opinion that the parties after procedural work in state court should make this a removable action.

2. There is no urgent need for the federal court to resolve this question.

My first discussion concerned the legal impediments to removal. This final section will consider prudential matters.

The Attorney General argues that he is authorized under the Monopolies Act to bring the treble damage claim as a representative of injured policyholders without joining the policyholders or certifying a class of policyholders. The Defendants assert that such procedural acrobatics are not possible. Whoever is "right," we have been directed to no statute, caselaw, or learned commentator that directly supports either assertion. State trial court procedures for raising these issues exist. If amendments to the pleadings are needed in order for this case to proceed, they should not be forced by a federal court after removal. This is the wrong court for forcing such discretionary choices because the only source of our jurisdiction is CAFA.

The other reason for believing we should not proceed in this way is that whether this has to be brought under a statute or rule as a class or mass action before the Louisiana Attorney General may seek these treble damages is primarily a function of state law. The authoritative judicial interpreters of that issue are all in Louisiana state courts. Research has indicated, though the procedures are unfamiliar to me, that the Defendants might easily test the reach of the Monopolies Act in the Louisiana state court by filing a motion in limine litis that challenges the Attorney General's capacity to bring claims for treble damages in the manner that he has. See Polk v. New York Fire & Marine Underwriters, Inc., 192 So. 2d 667, 670 (La. Ct. App. 1966); 1 FRANK L. MARAIST, LA. CIV. L. TREATISE § 6:6 (2d ed. 2007). In fact, the Monopolies Act expressly authorizes such a motion, called an "exception," and provides for an expedited review of the state trial court's ruling on the motion. La. Rev. Stat. § 51:134.

The state court's ruling on that motion and any interlocutory appeals that might be permitted would be dispositive on the issues before us and would not be Erie guesswork. Because this case does not present typical, non-CAFA diversity issues, I can perceive no reason to rush questions of state law

25

into the federal courts. Generally, a defendant may not remove a case "on the basis of jurisdiction conferred by section 1332" if a year has passed since the suit was commenced. 28 U.S.C. § 1446(b); see Tedford v. Waner-Lambert Co., 327 F.3d 423, 426-27 (5th Cir. 2003). However, Congress deleted the one-year limitations period for removals under CAFA. 28 U.S.C. § 1453. Congress has thereby ended any need for haste that other times accompanies a defendant's efforts to show that a case is removable on the basis of diversity jurisdiction. This makes sense when one recognizes that not every state statute or rule of procedure that permits representative actions will mirror Rule 23. It may take some time for state procedural mechanisms to give enough shape to a "representative" state-court action for a federal court to say confidently that it is the type of class action "equivalent" that Congress intended to make removable under CAFA.

I recognize that federal courts have a duty to determine their jurisdiction based on the case that is presented at the time of removal. I am trying to follow that command. This complaint does not present a class or mass action on its face, and it is not brought under a statute or rule authorizing a class action. We should find that federal jurisdiction has not been shown.

I would reverse and order remand to state court. In fairly short order, the skirmishing of motions can be expected, that would resolve there the issues that the majority resolves here. If the result of those motions is to create a class or mass action, then no doubt removal will again occur.

My disagreement with the majority is on forum and timing. Respectfully, I believe the wrong court is making a premature decision.