GILMAN, Senior Circuit Judge,
dissenting:
The majority has concluded that the Class Action Fairness Act (CAFA) does not provide federal jurisdiction over the West Virginia Attorney General’s lawsuit because this case is a parens patriae action and not a “class action” as defined by CAFA. For the reasons set forth below, I respectfully disagree.
The primary difficulty in this case, as I see it, is that CAFA does not actually define a class action. As the majority notes, CAFA’s definition of a class action is essentially circular: “the term ‘class action’ means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.” 28 U.S.C. § 1332(d)(1)(B). And CAFA gives no guidance as to what type of state statute or rule of judicial procedure should be considered “similar” for purposes of conferring federal jurisdiction.
In my view, the essence of a class action is set forth in the first sentence of the term’s definition in Black’s Law Dictionary: “A lawsuit in which the court authorizes a single person or a small group of people to represent the interests of a larger group.... ” Black’s Law Dictionary 284 (9th ed.2009). I believe that the present suit brought by the Attorney General squarely fits within that authoritative definition of a class action.
True enough, as the majority points out, the Attorney General’s suit was not brought under Rule 23 of the West Virginia Rules of Civil Procedure. This means that the elements of numerosity, commonality, typicality, and adequacy of representation have not been specifically pleaded. But I submit that these are subsidiary factors that do not detract from the essence of the action. They are, in other words, “bells and whistles” whose absence in the pleadings do not prevent the Attorney General’s suit from being considered a class action under CAFA.
To decide whether CAFA grants federal jurisdiction over the Attorney General’s *180 lawsuit, therefore, one must determine the essence of the action. See Louisiana ex. rel. Caldwell v. Allstate Ins. Co., 536 F.3d 418, 424 (5th Cir.2008) (“It is well-established that in determining whether there is jurisdiction, federal courts look to the substance of the action and not only at the labels that the parties may attach.”). I believe that the answer to this inquiry ultimately turns on who the real party in interest is in this case. If West Virginia is the real party in interest, then this is a proper parens patriae action over which the federal courts lack jurisdiction. See Postal Tel. Cable Co. v. Alabama, 155 U.S. 482, 487, 15 S.Ct. 192, 39 L.Ed. 231 (1894) (“A state is not a citizen. And under the judiciary acts of the United States it is well settled that a suit between a state and a citizen or a corporation of another state is not between citizens of different states, and that the circuit court of the United States has no jurisdiction of it, unless it arises under the constitution, laws, or treaties of the United States.”). On the other hand, if the real parties in interest are the allegedly overcharged West Virginia consumers, and the state is only a nominal party, then I believe that we have jurisdiction under CAFA.
The Attorney General brings this suit in what he alleges is West Virginia’s parens patriae capacity. “In order to maintain such an action, the State must articulate an interest apart from the interests of particular private parties,” also known as a “quasi-sovereign interest.” Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez, 458 U.S. 592, 607, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982). The Supreme Court has stated that there are two general categories of quasi-sovereign interests: (1) a state’s interest in the physical and economic well-being of its citizens in general, and (2) a state’s interest in “not being discriminatorily denied its rightful status within the federal system.” Id.
Snapp provides an example of a valid quasi-sovereign interest. In that case, the Attorney General of Puerto Rico alleged that certain east-coast apple growers were violating federal labor and immigration laws by discriminating against Puerto Ricans in favor of foreign laborers. The Supreme Court concluded that Puerto Rico has a “substantial interest in assuring its residents that it will act to protect them” from discrimination. Id. at 609. Alternatively, the Court concluded that Puerto Rico had parens patriae standing to “pursue the interests of its residents in the Commonwealth’s full and equal participation in the federal employment service scheme.” Id.
Other examples of successful parens patriae actions include cases where a state has sought to enjoin a public nuisance or ensure the economic well-being of its citizenry generally. See, e.g., Missouri v. Illinois, 180 U.S. 208, 248, 21 S.Ct. 331, 45 L.Ed. 497 (1901) (holding that Missouri could pursue an injunction to prevent the defendants from discharging sewage in such a way that polluted the Mississippi River in Missouri); Pennsylvania v. West Virginia, 262 U.S. 553, 592, 43 S.Ct. 658, 67 L.Ed. 1117 (1923) (recognizing Pennsylvania and Ohio as the proper parties to represent the interests of their citizens in maintaining access to natural gas produced in West Virginia); Georgia v. Pennsylvania R. Co., 324 U.S. 439, 450, 65 S.Ct. 716, 89 L.Ed. 1051 (1945) (holding that Georgia had an interest apart from that of its citizens where numerous railroads had conspired to fix freight rates in a manner that discriminated against Georgia shippers in violation of federal antitrust laws). “In sum, if a state can demonstrate that, in bringing an action, it seeks only to protect the well-being of its residents in general, it has expressed a quasi-sovereign interest in the entire action.” West Virginia ex rel. *181 McGraw v. Comcast Corp., 705 F.Supp.2d 441, 446 (E.D.Pa.2010).
The “analytical framework in which a court examines a state’s claims for relief has a powerful impact on the court’s ultimate conclusion as to whether the state has a quasi-sovereign interest in all the relief it seeks.” Id. at 447. Like the Fifth Circuit in Caldwell, and the Eastern District of Pennsylvania in Comcast, I would adopt a claim-by-claim approach to determine if West Virginia has a sufficient quasi-sovereign interest such that it is acting within its parens patriae authority. This framework best aligns with CAFA’s expansion of federal jurisdiction over class actions. See Comcast, 705 F.Supp.2d at 449 (“The claim-by-claim approach does a better job of unearthing a state’s real interest in a suit because, unlike the wholesale approach, it does not blur the lines between those claims for which a state has a well-recognized interest, and those claims for which a state’s interest is negligible.”).
In Caldwell, the Louisiana Attorney General filed a state-court lawsuit styled as a parens patriae action against several insurance companies and other defendants. The suit sought forfeiture of illegal profits, treble damages, and injunctive relief due to the defendants allegedly agreeing to undervalue and underpay certain insurance claims of Louisiana citizens, in violation of Louisiana’s antitrust laws. See Louisiana ex. rel. Caldwell v. Allstate Ins. Co., 536 F.3d 418, 422-23 (5th Cir.2008). Upon review, the Fifth Circuit concluded that the Attorney General was only a nominal party in interest for purposes of the treble-damages claim in light of the fact that the state was seeking to recover those damages on behalf of individual policyholders. In reaching this conclusion, the Fifth Circuit stated that it was mindful that Louisiana was also seeking injunctive relief, a remedy clearly sought on behalf of the state. Id. at 430. But the court ultimately concluded that despite the request for injunctive relief, the individual policyholders were the real parties in interest and, because the requirements of a “mass action” were met, the action was properly removed under CAFA. Id.
Similarly, in Comcast, the United States District Court for the Eastern District of Pennsylvania found that the Attorney General was not acting within West Virginia’s parens patriae authority where he sought relief for a “discrete group of Comcast’s premium subscribers.” Comcast, 705 F.Supp.2d at 450. In that case, the district court concluded that West Virginia did not have a quasi-sovereign interest in the antitrust treble and compensatory-damages claims. The court further held that the West Virginia Antitrust Act was sufficiently similar to Rule 23 of the Federal Rules of Civil Procedure to meet CAFA’s requirements, thereby conferring federal jurisdiction over the case. Id. at 454.
Here, the Attorney General asserts that the defendants (the Pharmacies) violated West Virginia’s Pharmacy Act and the WVCCPA, and he seeks damages payable directly to the allegedly aggrieved West Virginia purchasers of generic drugs under WVCCPA § 46A-7-lll(l), civil penalties under WVCCPA § 46A-7-lll(2), injunctive relief, and other appropriate remedies. Utilizing a claim-by-claim framework, I believe that the primary thrust of this case is the excess-charges claim (Count III) for which the Attorney General seeks reimbursement payable directly to the affected consumers under WVCCPA § 46A-7-111(1).
I reach this conclusion for two reasons: (1) the WVCCPA provides that a ruling that the consumers have been overcharged will result in those overcharges being remitted directly to the consumers, and (2) *182 injunctive relief and any civil penalties are discretionary with the court and require more stringent proof on the part of the Attorney General. Compare West Va. Code § 46A-7-lll(2) (requiring proof of repeated and willful violations of the WVCCPA before civil penalties may be awarded) with West Va.Code § 46A-7-111(1) (allowing the Attorney General to bring an action against a creditor for charging consumers in excess of what the law permits, regardless of the creditor’s state of mind).
Just as the Louisiana Attorney General did not have a quasi-sovereign interest in the treble-damages relief he sought on behalf of individual policyholders in Caldwell, the West Virginia Attorney General here does not have a quasi-sovereign interest in the refunds that the Pharmacies will be required to pay directly to the affected consumers if they are found to have violated the WVCCPA. Admittedly, the Attorney General is also seeking civil penalties and injunctive relief, these being the type of claims clearly within the state’s parens patriae authority. But for the reasons stated above, I do not believe that these claims are the primary focus of this case, and are instead subsidiary claims that will be considered by the trial court only if the primary claim of reimbursement to the allegedly overcharged consumers is successful.
I believe that my analysis is strengthened by the fact that some of the same private attorneys representing the Attorney General here are simultaneously representing individuals who have filed essentially identical claims against the same defendants in Michigan and Minnesota. No one questions that those cases are class actions; in fact, they were filed as class actions. See Graphic Comms. Local 1B Health & Welfare Fund “A” v. CVS Caremark Corp., No. 09-cv-2203 (D.Minn); City of Lansing v. CVS Caremark Corp., No. 09-994 (30th Jud. Cir., Ingham County, Mich). If one were to close one’s eyes as to who the named plaintiff is in the three lawsuits, there is no way to detect a material difference between the Attorney General’s request for repayment to overcharged consumers under WVCCPA § 46A-7-lll(l) in the present case and the same claims that are pending in Michigan and Minnesota.
CAFA’s legislative history, which is admittedly limited, also supports my conclusion that this case is simply not a parens patriae action. During the debate in the U.S. Senate over CAFA, Senator Pryor proposed an amendment that would have exempted all class actions filed by state attorneys general from removal under CAFA. See 151 Cong. Ree. S1157 (daily ed. Feb. 9, 2005). Both Senators Grassley (a cosponsor of CAFA) and Hatch (the former chair of the Senate Judiciary Committee) opposed the Pryor Amendment because, among other things, the Amendment risked “creating a situation where State attorneys general can be used as pawns so that crafty class action lawyers can avoid the jurisdictional provisions of [CAFA]” by “simply including] in their complaint a State attorney general’s name as a purported class member.” Id. at 1163-64.
The concern that Senators Grassley and Hatch expressed in opposing the ultimately defeated Pryor Amendment is exactly what has come to fruition here. I believe that the West Virginia Attorney General has been “used as a pawn” so that the private class-action lawyers can remain in state court and avoid the impact of CAFA, despite the fact that the real parties in interest are the allegedly aggrieved West Virginia consumers and not the state.
Having concluded that the affected West Virginia consumers are the real parties in *183 interest, I find that this action should be removable under CAFA because the essential requirements of a class action are met given the factual circumstances of this case. Although the WVCCPA does not contain all of the requirements of Rule 23 of the Federal Rules of Civil Procedure, “CAFA does not require such exactitude.” West Virginia ex rel. McGraw v. Comcast Corp., 705 F.Supp.2d 441, 452 (E.D.Pa.2010). The Senate Judiciary Committee Report on CAFA states that the definition of a class action should be interpreted liberally:
[CAFA’s] application should not be confined solely to lawsuits that are labeled “class actions” by the named plaintiff or the state rulemaking authority. Generally speaking, lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions.
S.Rep. No. 109-14, at 35, 2005 U.S.C.C.A.N. 3, 34 (2005).
Here, the West Virginia Attorney General is representing a large group of West Virginia citizens who have allegedly been overcharged by the Pharmacies in their purchase of generic drugs. Yet their claims are too small on an individual basis to justify any one of them bringing suit alone. This is exactly the type of situation that class actions were designed to address. See Montgomery Ward & Co. v. Ganger, 168 F.2d 182, 187 (8th Cir.1948) (“The class action was an invention of equity mothered by the practical necessity of providing a procedural device so that mere numbers would not disable large groups of individuals, united in interest, from enforcing their equitable rights nor grant them immunity from their equitable wrongs.” (internal citation omitted)).
Further, the WVCCPA clearly contemplates that the Attorney General can fairly and adequately protect the interests of West Virginia’s generic-drug purchasers by bringing this type of lawsuit on behalf of the class. See Comcast, 705 F.Supp.2d. at 453 (“The [West Virginia Antitrust Statute] assumes that the state attorney general is an adequate representative....”). The majority apparently disagrees, concluding that the Attorney General’s lawsuit cannot be considered a class action because the Attorney General is not an actual member of the class. It principally relies on the case of General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), to support its conclusion.
Falcon is a Title VII case in which Mexican-American employees filed suit against their employer for alleged discrimination in hiring and promoting. The Supreme Court held that the class representative’s complaint failed to include any “specific presentation identifying the questions of law or fact that were common to the claims of respondent and of the members of the class he sought to represent.” Id. at 158, 102 S.Ct. 2364. Specifically, the evidentiary approaches to the individual and class claims were entirely different because the class representative “attempted to sustain his individual claim by proving intentional discrimination, [whereas he] tried to prove the class claims through statistical evidence of disparate impact.” Id. at 159, 102 S.Ct. 2364.
I have no problem with the majority’s proposition that the class representative’s claims should be typical of those of the class as a whole. But Falcon is distinguishable from this case. Unlike the class representative in Falcon, whose claims were not typical of the class, the putative class in this case is comprised of identically situated West Virginia consumers who have allegedly been overcharged for their generic drugs. I therefore believe that the majority’s conclusion that the Attorney *184 General cannot be a class representative because he has not literally been injured is too narrow a reading of class representation.
The Fifth Circuit, in fact, did not even discuss the point that the Louisiana Attorney General himself was not actually harmed. Rather, the court simply concluded that the lawsuit was “brought in a representative capacity on behalf of those who allegedly suffered harm.” See Caldwell, 536 F.3d at 430; see also Comcast, 705 F.Supp.2d at 453 (stating that the West Virginia Antitrust Act assumes that the Attorney General is an adequate representative).
The majority also relies on General Telephone Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980), and In re Edmond, 934 F.2d 1304 (4th Cir.1991), to conclude that the Attorney General’s role in this case “is more analogous to the role of the EEOC or other regulator when it brings an action on behalf of a large group of employees or a segment of the public.” But these cases are distinguishable. General Telephone involved a Title VII action filed by the EEOC in its own name pursuant to its authority under § 706 of the Civil Rights Act of 1964. The Supreme Court concluded that where the EEOC acts under § 706, “it acts also to vindicate the public interest in preventing employment discrimination,” and not as a class representative. Id. at 326, 100 S.Ct. 1698. Section 706 expressly authorizes the EEOC to bring a “civil action against any respondent ... upon failure to secure an acceptable conciliation agreement, the purpose of the action being to terminate unlawful practices and to secure appropriate relief.” Id. at 324, 100 S.Ct. 1698. And the EEOC has exclusive jurisdiction for the 180-day period following the filing of a charge with the Commission.
In contrast, the Attorney General’s power under WVCCPA § 46A-7-lll(l) is at all times controlled by decisions that the consumer is free to make regarding whether to initiate his or her own lawsuit, and the relief the Attorney General seeks under that provision is solely for the benefit of the aggrieved consumer. Further, General Telephone involved federal questions arising under the Civil Rights Act of 1964 and therefore did not address the availability of federal jurisdiction in a diversity action.
In re Edmond is also distinguishable. In that case, the Fourth Circuit held that the Maryland Consumer Protection Act gave the Maryland Consumer Protection Division parens patriae authority to bring a nondischargeability proceeding against a debtor. The court concluded that the Consumer Protection Division was acting on behalf of the state’s quasi-sovereign interest because (1) the Maryland Consumer Protection Act grants the Consumer Protection Division the authority to “initiate administrative hearings to obtain a cease and desist order on its own initiative,” and (2) the Division has the ability to require disgorgement, in the absence of individual complaints, and in some cases “over and above that which will be returned to individuals.” In re Edmond, 934 F.2d at 1310-11 (internal quotation marks omitted).
Unlike the Maryland Consumer Protection Act, WVCCPA § 46A-7-111G) does not “contemplate!] enforcement by the [Attorney General] without regard to individual consumers.” See id. at 1310. The Maryland Consumer Protection Act provides that a “private action is ‘in addition’ to any action by the Division.” Id. at 1312 (quoting Md.Code Ann. Comm. Law § 13-408). In contrast, the Attorney General’s power under WVCCPA § 46A-7-lll(l) is dependent on whether the consumer files *185 his or her own suit. I believe that the fundamental differences between the Maryland Consumer Protection Act and the WVCCPA makes any reliance on In re Edmond misplaced.
As mentioned above, the allegedly overcharged consumer, like any putative class member considering whether to join a class action, has the ultimate say as to whether to be bound by the Attorney General’s lawsuit. WVCCPA § 46A-7-lll(l) provides in pertinent part that
[i]f a consumer brings an action against a creditor to recover an excess charge or civil penalty, an action by the attorney general to recover for the same excess charge shall be stayed while the consumer’s action is pending and shall be dismissed if the consumer’s action is dismissed with prejudice or results in a final judgment granting or denying the consumer’s claim.
The Attorney General’s power over a particular generic-drug purchaser’s claim is thus ultimately controlled by the consumer. I therefore believe that WVCCPA § 46A-7-111 is sufficiently similar to Rule 23 of the Federal Rules of Civil Procedure to meet CAFA’s requirements for class actions. And because this is (1) a civil action (2) in which the amount in controversy exceeds the sum or value of $5,000,000 and (3) involves a plaintiff class exceeding 100 persons whose West Virginia citizenship is different from any defendant, none of whom are considered citizens of West Virginia, I would hold that CAFA’s jurisdictional requirements are met. See 28 U.S.C. § 1332(d).
One final issue that the majority addresses is the concept of sovereign immunity. But because West Virginia voluntarily brought this lawsuit, I see no Eleventh Amendment or sovereign immunity concerns in asserting federal jurisdiction over this case. See In re Methyl Tertiary Butyl Ether (“MTBE”) Prods. Liab. Litig., 488 F.3d 112, 118-120 (2d Cir.2007) (explaining that the “removal of the cases here was the result of the voluntary acts of California and New Hampshire in commencing the lawsuits against the defendants [and,] having done so, these states subjected themselves to all the rules and consequences attendant to that decision”); see also California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 848 (9th Cir.2004) (rejecting the state’s argument that involuntary removal is equal to commencing a suit against the state because “where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment”) (quoting Gunter v. Atl. Coast Line R.R. Co., 200 U.S. 273, 284, 26 S.Ct. 252, 50 L.Ed. 477 (1906)).
In sum, there is a saying that if something looks like a duck, walks like a duck, and quacks like a duck, it is probably a duck. To my mind this case “quacks” much more like a CAFA class action than a parens patriae case. I would therefore reverse the judgment of the district court and allow this case to proceed in federal court.