JENNIFER WALKER ELROD, Circuit Judge,
concurring in the judgment:
I concur in the judgment because the majority opinion is a fair application of our binding precedent, namely Louisiana ex rel. Caldwell v. Allstate Insurance Co., 536 F.3d 418 (5th Cir.2008). I write separately, however, to express my concerns with Caldwell. Caldwell’s claim-by-claim approach is problematic when applied to CAFA’s “mass action” provision in parens patriae suits such as the instant case.[1] Moreover, and just as troubling, applying Caldwell’s reasoning to CAFA’s general public exception may render the exception a dead letter in this circuit. We should reconsider Caldwell and correct our course in this area of the law.
We have jurisdiction over this case only if it is a “class action” or a “mass action” under CAFA. For the reasons stated in the majority opinion, this is not a “class action.” The central issue, then, is whether Mississippi’s lawsuit is a “mass action.” CAFA defines that term as:
[A]ny civil action ... in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs’ claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdiction amount requirement under [28 U.S.C. § 1332(a) ].
28 U.S.C. § 1332(d)(ll)(B)(i). In Caldwell, we considered the application of this provision to a parens patriae suit.
As the majority opinion explains, Caldwell essentially defined “persons” in the *804 mass action context as the real parties in interest with respect to each claim in the suit. See 536 F.3d at 424, 429. In that case, Louisiana sued several insurance companies for conspiring to suppress competition and sought, among other things, treble damages on behalf of its citizens. Id. at 422-23. The defendants removed the case to federal court, “argu[ing] that although labeled parens patriae, th[e] case [was] in substance and fact a ... ‘mass action’ ” under CAFA. Id. at 423. We evaluated Louisiana’s suit on a claim-byelaim basis, rather than as a whole. Id. at 429-30. Using this approach, we concluded that Louisiana consumers were the real parties in interest with respect to the treble damages claim; therefore, the suit involved the monetary claims of 100 or more persons and (because it also met the other statutory requirements) was a mass action. Id. '
Here, as the majority opinion shows, applying the claim-by-claim approach leads to the conclusion that Mississippi consumers are the real parties in interest with respect to the state’s restitution claim, so this is a “mass action” under CAFA.[2] This result is the exact opposite of the outcome in many other similar lawsuits around the country.[3] That so many other courts are *805 reaching a different result in cases that involve, similarly-situated litigants and nearly identical claims suggests that we should consider whether we have staked out the correct position. I believe we have not.
I.
As an initial matter, I agree with Judge Southwick’s dissenting opinion in Caldwell. Judge Southwick would have ordered remand of Louisiana’s suit to state court because its complaint did not “on its face” present a class or mass action. Caldwell, 536 F.3d at 436 (Southwick, J., dissenting). In reaching that conclusion, Judge South-wick acknowledged two important principles: (1) “the plaintiff is the master of his complaint,” and (2) “[djoubts about propriety of removal are resolved in favor of' remand.” Id. at 433 (citations omitted). Consistent with these principles, “when we decide whether a suit is removable under CAFA, we should determine what the case is, not what it must be if all the relief requested is to be part of the litigation.” Id. at 432-33. Of course, this view did not carry the day in Caldwell, but the development of case law outside this circuit since then suggests that we should take another look.
Consistent with Judge Southwick’s dissent, almost every court that has independently considered Caldwell’s claim-by-claim approach has either questioned or disagreed with it.[4] Indeed, every court of appeals to address the issue since Caldwell has rejected its approach. See AU Optronics Corp. v. South Carolina, 699 F.3d 385, 393-94 (4th Cir.2012) (adopting “the whole-case approach and rejecting the claim-by-claim approach”); Nevada v. Bank of Am. Corp., 672 F.3d 661, 670 (9th Cir.2012) (acknowledging the court’s adoption of “the approach of looking at the case as a whole to determine the real party in interest, rather than the claim-by-claim approach adopted in Caldwell”); Madigan, 665 F.3d at 773-74 (referencing the courts that have questioned Caldwell’s analysis and holding that an action was not a removable “mass action” under CAFA, even if the state was not a real party in interest for damages claims). Each of these decisions includes convincing reasons to discard the claim-by-claim approach, a few of which I discuss here.
First, the claim-by-claim approach does not find a foothold in CAFA’s text. The Caldwell court resorted to CAFA’s legislative history to rationalize its approach. 536 F.3d at 424; see Madigan, 665 F.3d at 773 (reasoning that Caldwell “did not adopt the claim-by-claim approach based on any language in CAFA itself, nor is there any such language to be found”). Perhaps that is because CAFA’s text does not suggest that, in a case in which a single plaintiff brings suit, a court should dissect the complaint to determine wheth *806 er that plaintiff is the sole beneficiary of each basis for relief. This court has repeatedly cautioned against considering legislative history unless the text of a statute is ambiguous.[5] See, e.g., Carrieri v. Jobs.com Inc., 393 F.3d 508, 518-19 (5th Cir.2004); see also Chamber of Commerce of U.S. v. Whiting, — U.S. —, 131 S.Ct. 1968, 1980, 179 L.Ed.2d 1031 (2011) (“Congress’s ‘authoritative statement is the statutory text, not the legislative history.’”) (quoting Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (citations omitted)). There is no ambiguity here. Moreover, even assuming arguendo that the legislative development of CAFA were relevant, the Caldwell court acknowledged that CAFA’s history reveals conflicting expressions of intent. See 536 F.3d at 424 n. 4; see also Harvey v. Blockbuster, Inc., 384 F.Supp.2d 749, 752-54 (D.N.J.2005) (discussing CAFA’s legislative history and concluding that Congress did not intend to encroach on the ability of states’ attorneys general to bring parens patriae actions).
Compounding the absence of textual support for the claim-by-claim approach is the Supreme Court’s directive that removal statutes should be “strictly construed.” Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002). This rule undermines the argument that a case is removable under CAFA even though it does not on its face satisfy the statute’s requirements. See Caldwell, 536 F.3d at 433 (Southwick, J., dissenting). Furthermore, the rule should apply with particular force when the plaintiff is a state that sued in its own courts. Removing such a case to federal court implicates important principles of federalism, and “considerations of comity [should] make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it.” Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 21 n. 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); see also West Virginia ex rel. McGraw v. CVS Pharmacy, Inc., 646 F.3d 169, 178 (4th Cir.2011), cert. denied, — U.S. —, 132 S.Ct. 761, 181 L.Ed.2d 484 (2011) (“While it is true that West Virginia voluntarily entered into its own courts to enforce its laws, it did not voluntarily consent to removal of its case to a federal court, and a federal court should be most reluctant to compel such removal, reserving its constitutional supremacy only for when removal serves an overriding federal interest.”).
Finally, the impetus for Caldwell’s procedure to pierce the pleadings and look to the nature of each claim for relief — instead of considering the essential nature and effect of the proceedings — does not provide a compelling basis to persist with that approach. At the outset of its opinion, the Caldwell court recognized that “Louisiana did not raise any objections to [the district court’s] decision to pierce the pleadings or [its] procedure for doing so .... As such, that issue [was] waived.” Caldwell, 536 F.3d at 425 (emphasis added). Therefore, while the Caldwell court referenced the proposition that “federal courts look to the substance of the action” when determining jurisdiction, id. at 424 (citations omitted), the court did not consider different methods for evaluating the substance (e.g., “as a whole,” as other circuits have done). The procedure stemming from the waived argument in Caldwell does not withstand the *807 persuasive force of the analysis in the subsequent decisions rejecting it.
II.
Beyond the problems of using the elaimby-claim approach for the mass action analysis, I am also concerned that its application to CAFA’s general public exception will negate the exception altogether in this circuit.
CAFA tells us not only what a “mass action” is, but also what it is not. See 28 U.S.C. § 1332(d)(11)(B)(ii)(I) — (IV). Specifically, the general public exception provides:
[T]he term “mass action” shall not include any civil action in which ... all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action.
28 U.S.C. § 1332(d)(ll)(B)(ii)(III). The majority opinion implicitly concludes that Caldwell’s approach also governs our analysis of this exception. If that is correct, then there is no question that the exception does not apply in this case because, as the majority opinion states, “there is no way that ‘all of the claims’ are ‘asserted on behalf of the general public.’ ” This result is troublesome.
If we deny the applicability of the general public exception when individual consumers are parties in interest, then, as a practical matter, we will have eliminated the exception in this circuit. Caldwell specifies that a case is a mass action if more than 100 persons are the real parties in interest as to any claim for relief; and pursuant to CAFA’s plain text, the general public exception cannot apply unless the case is a mass action. Under this framework, it is difficult to imagine a case that could be a mass action that also falls within the general public exception. See, e.g., Entergy Miss., 2012 WL 3704935, at *7 n. 6, *15 (following Caldwell and concluding that the general public exception could not apply because “[ejven if the State has a quasi-sovereign interest in protecting Mississippi consumers ... the presence of the discrete group of [citizens] who have a substantive legal right to receive restitution ... means that ‘all of the claims in the action’ are not asserted on behalf of the general public”). In essence, our precedent has created a situation in which a case cannot satisfy the criteria of both the mass action provision and the general public exception.[6]
The majority opinion states that this concern “must yield to our responsibility to apply the unambiguous, express language of a statute as written,” but that misses the point. It is not CAFA’s plain text that causes the problem, but rather our approach in applying the text. But for the claim-by-claim approach, we could give effect to both the mass action provision and the general public exception.[7] In CAFA, *808 Congress defined a category of cases that are mass actions and explicitly specified that certain cases “shall not” be included in that category. Our approach in applying the statute has essentially eliminated the latter provision, contrary to well-established canons of construction that counsel against interpretations that render parts of a statute meaningless. See, e.g., White v. Black, 190 F.3d 366, 368 (5th Cir.1999) (citation omitted) (explaining that we must “give words their ordinary meaning and ... not render as meaningless the language of a statute”); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (1st ed.2012) (discussing the “surplusage canon” of construction, which provides that “[i]f possible, every word and every provision is to be given effect .... None should be ignored. None should be given an interpretation that causes it ... to have no consequence.” (emphasis added)). Therefore, we should reconsider Caldwell ’s approach to ensure that every facet of CAFA may be given effect in our circuit.
III.
I concur in the judgment because the majority opinion is a fair application of our precedent in this challenging context. For the reasons above, however, we should reconsider that precedent and adopt a different approach for analyzing the removal of parens patriae suits under CAFA.

. I disagree with the majority opinion's veiled assertion that this may not be a parens patriae suit because "Mississippi is pursuing the interests of LCD purchasers.” In its complaint, Mississippi identified a valid quasi-sovereign interest in preventing illegal antitrust conduct prohibited under MAA and MCPA. The facts in Mississippi’s complaint also show that it sought restitution based, at least in part, on generalized harm to the Mississippi economy caused by Appellants' price-fixing scheme. The LCD consumers may be real parties in interest under Caldwell's approach but that does not eviscerate Mississippi's asserted quasi-sovereign interest in the restitution claim. Moreover, the caveats to parens patriae authority that the majority opinion references apply only when the state is a nominal party in interest. The majority opinion never states that Mississippi is merely a nominal party in interest; to the contrary, it recognizes that "the real parties in interest in this suit include both the State and individual consumers of LCD products.” Furthermore, unlike in Caldwell, where the damages were to go to specific policyholders, Mississippi asserted both in its complaint and at oral argument that it would retain any restitution damages.

. The majority opinion reaches this result using the claim-by-claim approach from Caldwell, but there are notable differences between Louisiana’s claims in Caldwell and Mississippi's claims here. In Caldwell, Louisiana sued under the Louisiana Monopolies Act, which provided that "any person who is injured in his business or property” under the Monopolies Act “shall recover! ] [treble] damages.” 536 F.3d at 429 (emphasis added) (quoting La.Rev.Stat. § 51:137). Because the Louisiana statute contemplated individual enforcement, the court reasoned that “the policyholders, and not the State, [were] the real parties in interest.” Id. (citation omitted); see also id. at 430 (concluding that there was “no reason to believe” that the policyholders were not the real parties in interest “given that the purpose of antitrust treble damages provisions [is] to encourage private lawsuits by aggrieved individuals for injuries to their businesses or property”) (citing Hawaii v. Standard Oil Co., 405 U.S. 251, 262, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972)). Here, Mississippi sued under MAA and MCPA, which specifically authorize the Attorney General to sue on behalf of the general public for violations of the respective statutes. See Miss.Code Ann. § 75-21-37 (providing direct statutory authority for Mississippi "to enforce civil features of the antitrust laws ... at law or in equity”); id. § 75-24-19(l)(b) (giving the attorney general direct statutory authority "[to] recover on behalf of a state a civil penalty in a sum not to exceed [$10,000] per violation”). In addition, the Mississippi Attorney General has "the powers of the Attorney General at common law.” Id. § 7-5-1. Those powers include "the right to institute, conduct and maintain all suits necessary for the enforcement of the laws of the State, preservation of order and the protection of public rights.” Gandy v. Reserve Life Ins. Co., 279 So.2d 648, 649 (Miss.1973) (citations omitted). Simply put, this case turns on different facts and law than did Caldwell.

. Several other states' attorneys general and private plaintiffs filed actions against the makers of LCD flat panels based on the same alleged conduct that forms the basis for this suit. See, e.g., LG Display Co., Ltd. v. Madigan, 665 F.3d 768 (7th Cir.2011); Illinois v. AU Optronics Corp., 794 F.Supp.2d 845 (N.D.Ill.2011); South Carolina v. AU Optronics Corp., No. 3:11-CV-731, 2011 WL 4344079 (D.S.C. Sept. 14, 2011). These cases essentially fall into two groups. Some were transferred to an MDL court in the Northern District of California. See In re TFT-LCD (Flat Panel) Antitrust Litig., No. 07-1827, 2011 WL 560593, at *1 (N.D.Cal. Feb. 15, 2011). Others, however, remained in the district courts to which they were removed— these cases were first filed in state court and involved states’ attorneys general asserting only state law claims against the LCD defendants. See, e.g., South Carolina, 2011 WL 4344079, at *2. The MDL court handling the first group of cases has examined states' interests in the actions “as a whole” when deciding real-party-in-interest questions. See In re TFT-LCD, 2011 WL 560593, at *3-4. The district courts dealing with the second set of *805 cases have done the same, consistently remanding parens patriae suits back to state court. See, e.g., Illinois, 794 F.Supp.2d at 859; South Carolina, 2011 WL 4344079, at *2. But see Mississippi ex rel. Hood v. Entergy Miss., Inc., No. 3:08-CV-780, 2012 WL 3704935, at *15 (S.D.Miss. Aug. 25, 2012) at *7 n. 6 (following Caldwell because it believed it was "duty bound” to do so).

. See, e.g., cases cited supra n. 2. Courts in other contexts (z.e., non-LCD cases) have also disagreed with Caldwell's approach. See, e.g., West Virginia ex rel. McGraw v. JPMorgan Chase & Co., 842 F.Supp.2d 984, 997-98 (S.D.W.Va.2012); Connecticut v. Moody's Corp., No. 3:10-CV-546, 2011 WL 63905, at *2-3 (D.Conn. Jan. 5, 2011); Missouri ex rel. Koster v. Portfolio Recovery Assocs., Inc., 686 F.Supp.2d 942, 945-46 (E.D.Mo.2010); Illinois v. SDS W. Corp., 640 F.Supp.2d 1047, 1052 (C.D.Ill.2009). But see West Virginia ex rel. McGraw v. Comcast Corp., 705 F.Supp.2d 441, 449-50 (E.D.Penn.2010) (concluding that Caldwell's framework is consistent with CAFA’s goals).

. I have previously expressed that I generally eschew the use of legislative history to determine a statute's intent. See, e.g., Villas at Parkside Partners v. City of Farmers Branch, Tex., 675 F.3d 802, 829 n. 4 (5th Cir.2012) reh'g en banc granted, 688 F.3d 801 (5th Cir.2012).

. I note some commentary consistent with this concern. See Dwight R. Carswell, Comment, CAFA and Parens Patriae Actions, 78 U. Chi. L.Rev. 345, 370 (2011) (recognizing that "[l]awsuits that seek only injunctive relief or money that will go to the state treasury rather than to state citizens are not mass actions as defined by CAFA. Thus, it does not make sense to argue that these are the only lawsuits that will fall within the mass action exception.”).

. The majority opinion also suggests that the general public exception is statutory surplus-age under any analysis. In making that assertion, the majority opinion conflates the definition of "persons” in the mass action provision with "claimants” and "members of a purported class” in the general public exception. See Russell v. Law Enforcement Assistance Admin., 637 F.2d 354, 356 (5th Cir.1981) (recognizing the “well settled rule of statutory construction that where different *808 language is used in the same connection in different parts of a statute it is presumed that the Legislature intended a different meaning and effect,” and holding that a “claimant” under one provision was not an "applicant or grantee” within the meaning of another provision (citation omitted)); cf. Mohamad v. Palestinian Auth., — U.S. —, 132 S.Ct. 1702, 1707-08, 182 L.Ed.2d 720 (2012) (holding that the term "individual” in the Torture Victim Protection Act meant “natural person,” but reiterating that courts should "respect Congress’ decision to use different terms to describe different categories of people or things” (citation omitted)).